IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO: 9:14-cv-80017-RNS

TERRANCE JUSTICE, ANDREA HATFIELD,
DEBBIE FINN, and KAREN DOTSON, on behalf
of Themselves and all others similarly situated,

Plaintiffs,

v.

RHEEM MANUFACTURING COMPANY,

Defendant.

_______________________________________________/

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## INTRODUCTION

Defendant Rheem Manufacturing Company ("Rheem") made and sold defective air conditioning evaporator coils. Rheem, while being forced to acknowledge the defect for purposes of its Rule 12 motion, nonetheless moves to dismiss the Plaintiffs' Amended Complaint ("AC") on various technical grounds, but Rheem can only support its motion by mischaracterizing Plaintiffs' factual allegations and inviting the Court to improperly draw factual inferences in Rheem's favor.[1] For example, Rheem contends that Plaintiffs failed to give Rheem notice of Rheem's breach of warranty even though the AC specifically alleges that Plaintiffs sought service on their defective evaporator coils through Rheem's authorized agents who carry out warranty service for Rheem. Rheem also claims its warranties limit the relief Plaintiffs can seek even though the complaint plainly pleads facts which establish that the warranties are unconscionable and fail in their essential purpose. Rheem also ignores the allegations in the AC which allege that Plaintiffs had a direct relationship with Rheem by arguing lack of privity and that Rheem's conduct precludes it from asserting the statute of limitations as a defense, yet Rheem argues otherwise. Some of the issues raised by Rheem are premature, and are not ripe for resolution in a motion to dismiss. The remaining arguments of Rheem are similarly without merit.

---

[1] There is a class action pending against Lennox involving substantially similar allegations, *Thomas v. Lennox Industries Inc.*, Civ. No. 1:13-cv-07747 (E.D. Ill.). The Amended Complaint alleges that Lennox manufactured defective evaporator coils and seeks damages and declaratory relief under the theories of breach of express and implied warranties, state consumer fraud and deceptive practices acts, false advertising, unjust enrichment, and fraudulent concealment. Lennox answered the Amended Complaint without filing a motion to dismiss. Presumably, Lennox did so because it knew any arguments it may advance in a Rule 12 motion would be futile. A copy of Lennox's Answer is attached as Exhibit A.

## STATEMENT OF FACTS

Plaintiffs in this action are purchasers of Rheem evaporator coils. Defendant Rheem Manufacturing Company is a large manufacturer of heating, ventilation and air conditioning products for residential use in the United States. (ECF No. 20 ¶ 1). One of the products it manufactures for use in its air conditioner systems is the evaporator coil. (ECF No. 20 ¶ 1). The evaporator coil cools air for the home and acts as a heat exchange. (*Id.* ¶ 2). Inside the evaporator coil, air passes over a tube, refrigerant absorbs the heat and cools the air. (*Id.*) Rheem manufactured its evaporator coils with copper tubing. (*Id.* ¶ 4). Copper tubing is uniquely vulnerable to a type of corrosion known as formicary corrosion. (*Id.*)

Formicary corrosion is caused by a chemical reaction between volatile organic compounds and copper tubes, resulting in microscopic tunnels within the copper tubing. (*Id.* ¶ 5). Refrigerant leaks from the tunnels in the tubing. (*Id.*) Formicary corrosion is difficult to detect and usually results in consumers being forced to repeatedly refill their air conditioners with refrigerant, often at significant cost. (*Id.* ¶ 7). Eventually, the coil fails. (*Id.*)

Rheem knew of the susceptibility of copper coils to formicary corrosion, the increasing incidence of formicary corrosion and the alternative designs available to prevent the incidence of formicary corrosion. (*Id.* ¶ 11). Despite this knowledge, Rheem continued to design and manufacture its Air Conditioning units using copper evaporator coils. (*Id.*) Rheem failed to inform its customers of the susceptibility of its evaporator coils to develop formicary corrosion and of the availability of replacement coils which are not susceptible to formicary corrosion. (*Id.* ¶ 14).

Rheem knew of the defects yet failed to honor its express and implied warranties. (*Id.* ¶ 18). If a defective evaporator coil leaked and was unable to provide cold air within the warranty

period, Rheem had a standard practice of replacing the refrigerant in the unit instead of replacing the coil. (*Id.* ¶ 17). This remedy was at most a stop gap measure as it failed to address the evaporator coil's defective tubing. (*Id.*) Once the warranty expired, the consumer was left with defective product with no remedy. (*Id.*)

Even if Rheem replaced the coil, it replaced defective evaporator coils with equally defective copper evaporator coils that were equally susceptible to formicary corrosion, and were equally likely to prematurely rupture and leak refrigerant under normal use. (*Id.* ¶ 16)

Plaintiffs in this action purchased Rheem air conditioning units with defective evaporator coils. Every one of their respective units prematurely failed to cool the air. Initially, the coolant was replaced in three of the units, and those units all experienced a subsequent failure in the form of the leaking of the evaporator coil. Eventually, all of the evaporator coils were replaced, but three of them leaked again resulting in a failure of the units to cool the home. All of the Plaintiffs incurred damages in replacing the units and the refrigerant as well as having to incur labor costs.

## LEGAL STANDARD

A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the court must accept as true the facts alleged in the complaint and view them in the light most favorable to the plaintiff. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 702 (11th Cir. 1985). A court must also limit its analysis to whether the complaint is sufficient rather than "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert denied*, *Hunt v. Republican Party*, 510 U.S. 828 (1993).

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. A complaint "does not need detailed factual allegations," but a pleading that offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. When a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

"[A] district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 563 n.8 (quotation omitted). Ultimately, the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555. The complaint must contain "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. The alleged facts need not be spelled out with exactitude, nor must recovery appear imminent. *Quality Foods de Centro America, S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 995 (11th Cir. 1983). A court will not dismiss a complaint based on the defendant's attempts to isolate and dissect sections of the complaint. *See, e.g., Standard Iron Works v. Arcelor Mittal*, 639 F. Supp. 2d 877, 902 (N.D. Ill. 2009).

## ARGUMENT

**I. Counts I – III Allege Valid Breach of Warranty Claims.**

**A. The AC Alleges that Plaintiffs have provided Defendant with proper notice.**

Defendant erroneously contends that Count I of Plaintiffs' AC should be dismissed because of an alleged lack of notice that it breached its express warranty. This is simply not the case as Plaintiffs repeatedly made Defendant aware of it breach of its express warranty through its authorized dealers and service technicians.

The AC alleges facts which comply with the Florida Uniform Commercial Code ("U.C.C.") which requires that "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach." Fla. Stat. § 672.607(3)(a). The AC allege that Plaintiffs provided the required notice by notifying Rheem's authorized dealers and service repairmen, as the Rheem warranty requires. As a matter of practice, when a coil fails due to formicary corrosion, Defendant requires its authorized dealers/service technicians to obtain the failed coil from the Plaintiffs and return it to Defendant as part of its warranty protocol; otherwise Defendant will not credit and compensate the dealer/technician for the work done. (ECF No. 20 ¶ 43). In this way, Defendant maintains exclusive control over all evidence relating to the defective coils, failure rates and in particular root cause analysis of copper coil failures. (*Id.*) Defendant was fully aware of the defective nature of these coils and of the failures under warranty because they physically received the coils. Accordingly, their argument that they were not put on notice is disingenuous, and they cite

no authority that notice to a manufacturer's authorized warranty agent fails to constitute notice for purpose of the Florida U.C.C..[2]

**B. The AC Properly Alleges Facts Which Establish the Applicability of Doctrines that Void the Limitations in the Rheem Warranty.**

The U.C.C. specifically acknowledges that the principles of law and equity supplement the provisions of an express warranty, which are contractual in nature.[3] *See, e.g.*, § 671.103, *Fla. Stat*. Courts in each of the jurisdictions at issue hold that, as in the law of contracts, a material breach of a warranty's terms can void its provisions, including those relating to remedies.[4] The materiality of the breach is key, and the AC clearly alleges that the defect in the Air Conditioners rendering them uniquely susceptible to formicary corrosion is in fact material, as the Air Conditioners cannot perform their sole function of properly cooling the home. (ECF No. 20 ¶¶ 41, 82, 83, 84, 102, 127). The AC properly pleads facts which establish that the limitations in the Rheem warranty are unenforceable under the failure of essential purpose doctrine and under the contractual doctrine of unconscionability.

**1. The AC Pleads Facts Which Establish That the Rheem Warranty Failed in its Essential Purpose.**

---

[2] Rheem's citation to *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) provides no support because in that case the plaintiffs failed to allege that they ever presented their vehicles to a Ford dealership for repair or that the Ford Dealership failed to make the repair. Indeed, if the plaintiffs in *Brisson* had presented their car to the dealership, that would have been sufficient notice.

[3] "A warranty is a contract." 77A C.J.S. Sales § 421; *see* Richard E. Speidel, *Warranty Theory, Economic Loss, and the Privity Requirement: Once More into the Void*, 67 B.U.L. Rev. 9, 15 (1987); *see also* §§ 2-313(1), 2-711(2)(f) U.C.C.; *see also. Florida: A warranty is a contract. Brennan v. Dow Chem. Co.*, 613 So. 2d 131, 132 (Fla. 4th DCA 1993); *Council Bros., Inc. v. Ray Burner Co.*, 473 F.2d 400, 406 (5th Cir. 1973).

[4] *Id.*; *see Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 78 (Minn. 1981) (finding "the [U.C.C] disfavors limitations on remedies and provides for their deletion where they would effectively deprive a party of reasonable protection against breach").

The Rheem warranty is a "repair and replace" warranty. "The purpose of a repair-or-replace contracted remedy is to give the buyer what he bargained for, namely goods that measure up to the contract . . . . This purpose [however] is defeated if the goods are destroyed by their own flaws so that repair or replacement are totally unsatisfactory."[5]

Defendant's breach of warranty goes to the essence of the warranty contract and defeats the purpose of making the contract in the first instance. As set forth in the AC, Plaintiffs and Class Members are stuck with defective Air Conditioners that Rheem has known were inherently defective and cannot be fixed, thus destroying the purpose of Rheem's "Limited Warranty." This leaves Plaintiffs and Class Members without any effective agreed-upon warranty and redress. (ECF No. 20 ¶¶ 11, 15, 17, 102). Rheem seeks to introduce facts beyond the allegations in the AC, touting that in 2013 it started to use aluminum coils as replacements for copper coils with formicary corrosion, but there is no evidence Plaintiffs received aluminum coils. That Rheem subsequently made changes to how it chose to apply its warranty does not change the failure of essential purpose for the Plaintiffs in this case. Substituting an inherently defective copper coil for another inherently defective copper coil is material and triggers the equitable failure of essential purpose doctrine.

This notion of materiality has been described by Williston as a "failure to do something that is so fundamental to a contract that the failure to perform that obligation defeats the essential purpose of the contract . . . and defeats the object of the parties in entering into the contract. 23 Williston on Contracts § 63:3 (4th ed.); *accord* Restatement (Second) of Contracts § 241 (1981).[6] When a breach is material, the victim of the breach may cancel the contract and may seek

5 2 Hawkland U.C.C. Series § 2-719:3 (Westlaw).

6 *See, e.g.*, *Covelli Family, L.P. v. ABG5, L.L.C.*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008).

damages caused by the breach,[7] and may do so even though the written warranty disclaims implied warranties or contains limitations on consequential damages. Having failed in its essential purpose, the self-serving limitations in the warranty are voided.[8] This is because the warranty containing the contractual limitations of remedies contemplates that the product can be effectively replaced or repaired. When it cannot, the purpose of the warranty has failed.[9]

Rheem seeks to benefit here from its assertion, again entirely outside the allegations of the AC, that it now, belatedly, provides a remedy which can fix the problem. But this does not save Rheem because the failure of essential purpose is judged by Rheem's actual and not theoretical performance under the warranty:

> Had [the warrantors] reasonably complied with their agreement contained in the warranty (that they would repair any defects), they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy. The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroys its benefits * * * It should be obvious that [warrantor] cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them.

---

[7] *Compare* § 672.711(1), *Fla. Stat*. *See also* Eric G. Andersen, *A New Look at Material Breach in the Law of Contracts*, 21 U.C. Davis L. Rev. 1073, 1093 (1988).

[8] This "failure of essential purpose" doctrine applies even when the warrantor disclaims all implied warranties, and limits remedies for breach of that express warranty to repair and replacement of defective parts, and can operate to lift or limit those disclaimers. In Florida as in other states, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in th[e] code" and is not limited by the warranty terms. § 672.719 (2), *Fla. Stat*.; *Parsons v. Motor Homes of Am., Inc.*, 465 So. 2d 1285, 1292 (Fla. 1st DCA 1985). *See also* 1 The Law of Prod. Warranties § 8:26 (Westlaw).

[9] On this point, Hawkland writes: "The purpose of a repair-or-replace contracted remedy is to give the buyer what he bargained for, namely goods that measure up to the contract…This purpose [however] is defeated if the goods are destroyed by their own flaws so that repair or replacement are totally unsatisfactory." 2 Hawkland U.C.C. Series § 2-719:3 (Westlaw).

*Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F. Supp. 39, 43 (N.D. Ill. 1970) (citations omitted).[10] *See also Telsmith, Inc. v. Bosch Rexroth Corp.*, 2013 WL 2211400 at *2 (E.D. Wis. May 21, 2013) ( finding that "Telsmith has alleged facts from which it can be plausibly inferred that Bosch has been unable to repair or replace the defective motors ***within a reasonable time***. . . . .") (emphasis added); *Tampa Farm Serv., Inc. v. Cargill, Inc.*, 356 So. 2d 347, 351 (Fla. 2d DCA 1978); *Cimino v. Fleetwood Enterprises, Inc.*, 542 F. Supp. 2d 869, 887 (N.D. Ind. 2008) (citation omitted) (finding purpose fails when forced to repeatedly utilize a prescribed remedy (in this case, alleged "repair" by Defendant) without appreciable corrective results). This concept was articulately explained as follows:

> the remedy of repair or replacement is the "silver bullet" that the buyer receives "[i]n exchange for parting with an arsenal of legal remedies." If the limited remedy fails, the "silver bullet turns to dust," leaving the buyer defenseless and at the seller's mercy, unless the buyer is then permitted to seek the full range of damages available.

*Strickler v. Peterbilt Motors*, Civ. NO. 04-3628, 2005 WL 1266674, * 3 (E.D. Pa. 2005) (Schiller, J.) (quoting *Caudhill Seed & Warehouse Co. v. Prophet 21, Inc.*, 123 F. Supp. 2d 826, 832 (E.D.Pa.2000)).

The materiality of the failure of essential purpose here is beyond dispute, especially on a Rule 12 motion. The AC details numerous Air Conditioners failures, specifically alleging that the units installed in the four Plaintiffs homes have ceased cooling on eight occasions, (ECF No. 20 ¶¶ 48-50, 54, 58, 63, 68, 70), the evaporator coils were replaced on five occasions, (ECF ¶¶ 49-50, 56, 63, 68), and of the five replaced coils, three of them subsequently failed within months of installation. (ECF ¶¶ 50, 58, 70).

---

[10] The above facts are more than sufficient to establish the applicability of the failure of essential purpose doctrine and the accompanying voiding of the warranty limitations.

### 2. The AC Adequately Alleges That Defendant's warranty limitations are unconscionable.

In addition to the failure of essential purpose doctrine, the AC alleges facts which establish that Rheem's limited warranty is unconscionable under Florida law. "[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003) (citations omitted).

The AC is replete with facts supporting procedural unconscionability. In determining whether an agreement is procedurally unconscionable, courts may consider: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Prendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2009).[11]

The AC alleges not only a disparity in bargaining power but also a failure to even provide the warranty to Plaintiffs before the product had been delivered and installed – the AC alleges that only half of the Plaintiffs received a copy of the limited warranty at all, and it was

---

[11] Defendant cites to *Prendergast v. Sprint Nextel Corp.*, a case that summarizes the "tension in Florida law regarding the analytical framework courts should use in evaluating both procedural and substantive unconscionability." 592 F.3d 1119, 1134-1139 (11th Cir. 2010). It lays out that Florida Courts have been split regarding the use of balancing/sliding scale or independent analysis concerning both procedural and substantive unconscionability. The Court in *Prendergast* certified all its issues of unconscionability to the Florida Supreme Court, which were denied at 97 So.3d 824 and never ruled upon in light of a straightforward application of *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). As the courts are split in their application, this Court may need to determine the appropriate analysis and its effect on any unconscionability ruling.

only *after* the defective product was installed in their homes, and that the other half of Plaintiffs never received any warranty of any kind. (ECF No. 20 ¶¶ 47, 53, 57, 62, 64, 67, 69). Not only was there no negotiation or opportunity for negotiation, but the terms of the warranty were not even provided to Plaintiffs until this large fixed appliance had already been installed, and in some instances not at all.

This is procedural unconscionability under any standard or definition, and it is wholly unlike the two unrelated cases Rheem cites regarding inequitable bargaining power's effect on procedural unconscionability. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025-27 (Fla. 4th DCA 2005), *review denied*, 918 So. 2d 292 (Fla. 2005). First, unlike in those cases, Plaintiffs here allege much more than a mere disparity in bargaining power. Second, in both those cases, as well as in *Prendergast*, the sole issue concerning unconscionability centered on whether a clause regarding class action waiver and enforcement of arbitration for telephone service providers could be upheld. That issue is not present before this Court.

Defendant also asserts that the warranty limitations are not substantively unconscionable, but Rheem can only get there by disregarding the allegations of the AC. Substantive unconscionability focuses on the actual agreement and whether or not its terms are unreasonable and unfair, and the AC forthrightly alleges facts which establish that the terms are unreasonable and unfair in this instance. *Stewart Agency, Inc.*,855 So. 2d 726, 728 (Fla. Dist. Ct. App. 2003). For example, the AC notes that Defendant's limitation on warranty calls for the repair or replacement of any part that "fails in [its] normal use and service" (ECF No. 20 Exhs. 5-7), a provision that is unconscionable because of the insidious nature of formicary corrosion in which the defect is often hidden from sight or misdiagnosed, and because Rheem replaces one set of defective coils with another set of defective coils or continually refills leaking refrigerant until

the warranty runs out, when the customer is left without repair or relief.[12] (ECF No. 20 ¶¶ 16, 17). Defendant now claims to have done away with its defective product, but will not reimburse Plaintiffs or Class members for labor costs associated with the diagnosis, replacement or continual replenishing of its defective units. (ECF No. 20 ¶¶ 48, 49, 50, 55, 56, 58, 63, 70, 71). Further, having knowledge of its product's defect, Defendant has not offered to replace <u>any</u> defective unit purchased by former customers with aluminum coils.

The terms of Defendant's limitation on warranty, along with its use of defective replacement parts, created an unjust and wholly inequitable situation for Plaintiffs and putative class members because "[w]hen a manufacturer is aware that its product is inherently defective the presumption is that the buyer's acceptance of limitations on his contractual remedies – including of course any warranty disclaimers – was neither 'knowing' nor 'voluntary,' thereby rendering such limitations unconscionable and ineffective." *Payne v. Fujifilm U.S.A., Inc.*, 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007). The alleged unconscionability of durational limits on warranties has repeatedly been the primary basis for denying similar motions to dismiss, particularly because unconscionability is fact intensive, and not amenable to disposition on the pleadings. *See e.g. Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989); *Henderson v. Volvo Cars of America, L.L.C.*, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010). As such, the limitations on warranties should be considered substantively unconscionable. *See e.g. In re Samsung DLP Television Class Action Litig.*, Civ. No. 07-2141, 2009 WL 3584352, *5 (D.N.J. Oct. 27, 2009) (Brown, J.) (allegations that a manufacturer sold a defective product

[12] Plaintiff alleges that Defendant began to sell replacement coils manufactured from aluminum in the fall of 2013. (ECF No. 20 ¶ 13). Without affidavit or evidence in support, Defendant alleges that neither Plaintiffs nor any member of the Class of Subclasses experienced any issues with the Air Conditioner units after this period (presumably due to its aluminum coils), which is an otherwise inappropriate allegation in a Rule 12 Motion. (ECF No. 25 at 14).

without informing buyers of the defect and imposed limitations on its product adequately stated a claim that the express warranty was unconscionable.); *Constr. Associates, Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 244 (N.D. 1989) ("Numerous courts, in a variety of commercial and consumer contexts, have held limitations and exclusions unconscionable when they leave the non-breaching party with no effective remedy. This is particularly true where the defect in the product is latent, so that the buyer is unable to discover the defect until additional damages are incurred.")(citations omitted).

**C. The Amended Complaint pleads facts which establish privity under relevant law due to the nature of the direct relationship with Rheem.**

Rheem argues that Plaintiffs' implied warranty claims fail because there is no privity between Plaintiffs and Rheem, (ECF No. 25 at 14-15), but its arguments concerning the implied warranties are similarly made without regard to the allegations of the AC. The presence or absence of privity is a factual question that cannot properly be resolved on this motion to dismiss. *Yvon v. Baja Marine Corp.*, 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007). Rheem cannot shirk its responsibilities under the facts of the AC by attempting to hide behind a privity wall.

A sale of a product in today's marketplace typically creates two relationships with the consumer: one with the immediate seller and one with the manufacturer that is oft times remote from the ultimate purchaser of the product.[13] In this setting, manufacturers routinely issue standardized, express written warranties that accompany the products for the benefit end-users.[14] In fact, the length and scope of coverage provided by a warranty is often a major selling point

[13] Donald F. Clifford, *Express Warranty Liability of Remote Sellers: One Purchase, Two Relationships*, 75 Wash. U.L.Q. 413, 415 (1997).

[14] *Id.*; *see* Nazmi Orkun Akseli, *Advertising and ""Pass-Through" Warranties Under Revised Article 2*, 106 Com. L.J. 65, 66 (2001).

manufacturers tout in order to convince a consumer to buy their product, particularly when the product is expensive and is intended to have a long useful life. The old common law notion of privity when applied "in the modern legal realm is essentially the relationship that allows a party to sue on the contract."[15]

When a manufacturer provides a written express warranty to an ultimate purchaser the manufacturer is in essence establishing a contractual relationship with that purchaser.[16] As alleged in the AC, Rheem was by no means a remote, uninvolved manufacturer upstream in the chain of distribution with no relationship to end users of its Air Conditioners.

The Rheem express warranty holds Rheem accountable for defects in the Air Conditioners irrespective of privity. As one court commented, a "manufacturer can hardly be heard to resurrect a common law requirement of privity when it has itself voluntarily provided a warranty that runs in favor of remote purchasers of its product."[17]

The AC also establishes privity under the language of sections 672.315 of the Uniform Commercial Code which states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and the buyer is relying on the seller's skill or judgment to select and furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for

---

15 Gary E. Sullivan & Braxton Thrash, *Purchasers Lacking Privity Overcoming "The Rule" for Express Warranty Claims: Expanding Judicial Application of Common Law Theories and Liberal Interpretation of U.C.C. Section 2-318*, 5 Drexel L. Rev. 49, 100 (2012).

16 *Id.*; *see, e.g.*, *Florida: Warranty is a contrac*t. *Brennan v. Dow Chem. Co.*, 613 So. 2d 131, 132 (Fla. 4th DCA 1993); *Council Bros., Inc. v. Ray Burner Co.*, 473 F.2d 400, 406 (5th Cir. 1973).

17 *Fischetti v. Am. Isuzu Motors, Inc.*, 918 So. 2d 974, 976 (Fla. 4th DCA 2005) (construing an express warranty); *Borchardt v. Mako Marine Intern., Inc.*, 08-61199-CIV, 2011 WL 2084177 (S.D. Fla. 2011); *Carnival Corp. v. Rolls–Royce plc*, 2009 WL 3861450, *3 (S.D. Fla. Nov.17, 2009) (Seitz, J.) (citing *Cedars of Lebanon Hosp. Corp. v. European X–Ray Distributors of America, Inc.*, 444 So. 2d 1068, 1072 (Fla. 3d DCA 1984) and Official Comment 2 to § 2-313 of the Uniform Commercial Code (U.C.C.)).

such purpose.

In this instance Rheem designed, manufactured and sold Air Conditioners with copper evaporator coils uniquely susceptible to formicary corrosion. Rheem warranted those Air Conditioners *directly* to the end users of the Air Conditioners. The buyer, warrantee, relied on Rheem's skill and judgment to select suitable components and systems to accomplish what people buy air conditioners to do. There was no disclaimer of the warranty as section 672.315 required and as such Florida law implies the warranty, other than to purportedly limit its duration. Thus, dismissal based on lack of privity is not supportable.[18]

There is also an element of estoppel here, as the AC alleges that Rheem provided (failed and flawed) warranty service, thus in essence acknowledging privity. Florida courts have found the privity requirement met even without an actual contract between the manufacturer and the

[18] Florida's history of requiring privity for implied warranty claims has been variable due in large part because of the overlap of implied warranty claims and strict liability in tort. In *West v. Caterpillar Tractor Co.*, 336 So. 2d 80 (Fla. 1976), the Florida Supreme Court first adopted strict liability in tort. In *Kramer v. Piper Aircraft Corporation*, 520 So. 2d 37 (Fla. 1988), the Eleventh Circuit Court of Appeals was unclear as to whether Florida intended to "strike the fatal blow" to exceptions to privity in product injury cases. *Kramer*, relying upon the case of *Affiliates for Evaluation and Theory Inc. v. Viasyn Corp.*, 500 So. 22d 688, 692 (Fla. 3d DCA 1987) clarified: "Although we did not expressly state in *West* that the common law implied warranty claim for personal injury no longer exists under Florida law absent privity, it is implicit from the language of the opinion that it was this Court's intent to abolish that cause of action where the remedy of strict liability is appropriate." *Id.* at 39.

*Affiliates* involved a mixed negligence implied warranty claim by Affiliates, who had no personal injury or property damage, against a computer manufacturer. Canvassing the Florida law, the Court held that *West* fundamentally altered the landscape: "*West* necessarily swept away such no-privity, breach of implied warranty cases in favor of strict liability in tort." As such the import of *West* is properly confined to the personal injury cases by virtue of the "side-by-side" of strict liability and implied warranty. *See Cedars of Lebanon Hosp. Corp. v. European X-Ray Dist. Of America*, 440 So. 2d 1068, 1071 (Fla. Dist. Ct. App. 1984) ("The language of *West* and subsequent cases, however, convinces us that strict liability should be reserved for those cases where there are personal injuries or damage to other property only.").

purchases where there has been "direct contact" between the parties.[19]

Plaintiffs have alleged Rheem's direct contacts with them, including the issuance of a written warranty and representations made about the quality of the Air Conditioners. (ECF No. 20 ¶¶ 47, 53, 57, 67, 75, 76, 91, 92, 93, 100, 172). Under such circumstances, privity to sue for breach of implied warranty under Florida law plainly exists. *Compare Cedars*, 444 So. 2d at 1072 ("there is no good reason for us to adopt a strictly literalist adherence to the doctrine of privity. . . . It seems fundamentally unfair, and anomalous in the extreme, to allow the manufacturer to hide behind the doctrine of privity when the product, which it induced the purchaser to buy, turns out to be worthless. . . . Requiring the purchaser to go against the seller, who must proceed in indemnification against the distributor, who must proceed against the manufacturer, is wasteful and inefficient.").

## III. Fraud and Deceptive Trade Practices Claims

### A. The Deceptive Trade Practices claims filed under Alabama, Georgia and South Carolina Law.

---

[19] *See Cedars of Lebanon Hosp. Corp. v. European X-Ray Dist. of America*, 440 So. 2d 1068, 1070-72 (Fla. Dist. Ct. App. 1984) (describing Florida's history of the privity requirement as "the bane of judicial existence since the doctrine was first enunciated in…1842" and holding that "there is no good reason for us to adopt a strictly literalist adherence to the doctrine of privity. Nor is it necessary for us to push beyond the outer limits of the doctrine as developed thus far and hold that there is no requirement of privity when an ultimate purchaser has economic damages only from a defective product. . . . We wish to emphasize that we are focusing on the direct contacts between the manufacturer and the ultimate purchaser/consumer in finding that privity exists in this case. . . . .It is the direct contacts which create the express and implied warranties under sections 672.313 and 672.315, Florida Statutes (1981)."). See also *Carnival Corp. v. Rolls-Royce PLC*, 08-23318-CIV-SEITZ, 2009 WL 3861450 (S.D. Fla. Nov. 17, 2009) (applying *Cedars* in finding no requirement of privity); *New Nautical v. Scoggins*, 731 So. 2d 145 (Fla. Dist. Ct. App. 1999); *MacMorris v. Wyeth Inc.*, 2005 WL 1528626 (M.D. Fla. June 27, 2005).

Plaintiffs do not oppose dismissal of the ADTPA, GFBPA and SCUTPA class allegations.

**B. The AC Pleads Facts Which Preclude Applying the Statute of Limitations to Plaintiffs' FDUTPA Claim.**

Rheem seeks dismissal of the AC's FDUPTA claim based on its statute of limitations affirmative defense. A plaintiff is not required to anticipate and negate an affirmative defense in the complaint, and a motion pursuant to Rule 12(b)(6) should be denied unless from the face of the complaint it is apparent that it is time barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004). A motion to dismiss on statute of limitations grounds should be denied where resolution depends either on facts not yet in evidence or on construing factual ambiguities in the complaint in defendants' favor. *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1252 (11th Cir. 2003).

The AC contains ample factual basis from which to conclude that the FDUPTA statute of limitations has been nullified through the well settled principles of equitable estoppel, which is well-established in Florida law. *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1076 (Fla. 2001). Specifically, fraudulent concealment has been described as a "species" of equitable estoppel, and the acts of concealment have satisfied the elements of estoppel. *Florida DHRS v. SAP,* 835 So. 2d 1091, 1095 (Fla., 2002); *see also In re TFT-LCD (Flat Panel) Antitrust Litigation*, Civ. No. 1827, 2011WL4387812 *2 (N.D. Cal. Sept. 20, 2011)(discussing fraudulent concealment and equitable estoppel under Florida law). Fraudulent concealment is applicable where a defendant takes steps to conceal his wrongful actions, thereby preventing a plaintiff from filing suit on time. *Id.*

Rheem's motion confuses the doctrines of equitable estoppel and tolling. While Rheem argues Plaintiffs have not met the standard for equitable estoppel, all of the cases Rheem cited in

support of its proposition discuss the different doctrine of equitable tolling.[20] The difference between the doctrines of tolling and equitable estoppel has been described by The Florida Supreme Court as being "as different as apples and oranges." *Major League Baseball*, 790 So. 2d at 1077. The difference lies in the fact that tolling suspends the statute of limitations while estoppel prevents a party from relying upon it as a defense.[21] *Id.* at 1075.

Equitable estoppel presupposes an act of wrongdoing, such as fraud and concealment, which prejudices a party's case:

> Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct. The doctrine bars the wrongdoer from asserting that shortcoming and profiting from his or her own misconduct. Equitable estoppel thus functions as a shield, not a sword, and operates against the wrongdoer, not the victim. This Court has applied the doctrine for more than a century and a half.

*Florida DHRS v. SAP*, 835 So. 2d 1091, 1097 (Fla., 2002), *quoting Major League Baseball*, 790 So. 2d at 1077.

The AC contains several allegations to show that Rheem took active steps both pre and post-sale to prevent Plaintiffs from discovering that Rheem manufactured defective coils. Before the sale, Rheem concealed the defective nature of its coils. (ECF No. 20 ¶ 46). After the sale, Rheem took additional steps to conceal the defective nature of the evaporator coils, while attempting to absolve itself of liability for the defects. Once the defect manifested, Rheem's

---

[20] *See* (ECF No. 25 at 17) (citing *Sabeta v. Baptist Hosp. of Miami, Inc.*, 410 F. Supp. 2d 1224, 1239 (S.D. Fla. 2005) (discussing equitable tolling); *Johnson v. McNeil*, 278 F. App'x 866, 872 n.3 (11th Cir. 2008) (discussing equitable tolling); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003) ("[M]ere ignorance of facts constituting the cause of action" will not toll the statute of limitations); *Sandy Springs Toyota v. Classic Cadillac Atlanta Corp.*, 604 S.E.2d 303, 305-06 (Ga. Ct. App. 2004)(discussing tolling the statute of limitations under Georgia law.)).

[21] Section 95.051 provides an exclusive list of conditions that can "toll" the statute of limitations.

standard practice was to replace the refrigerant in the unit, not the defective coil. (ECF No. 20 ¶ 17).

This is precisely what happened to Plaintiff Justice. After his unit ceased cooling, Rheem's agents filled his unit with refrigerant, at the expense of Mr. Justice. (ECF No. 20 ¶ 48). The evaporator coil ceased cooling a second time, and Rheem's agent filled the unit with refrigerant, charging Mr. Justice. (ECF No. 20 ¶ 49). It was not until the unit ceased cooling a third time that Rheem replaced the evaporator coil. (ECF No. 20 ¶ 49). But, the replacement coil was equally defective. (ECF No. 20 ¶ 16). Rheem knew that the defect would eventually manifest itself. (ECF No. 20 ¶ 16) Rheem further prevented Plaintiffs from discovering the defect, by requiring its agents to return the defective coils to Rheem, thus maintaining exclusive control over the defective coils. (ECF No. 20 ¶ 43). Rheem's conduct makes a prima facie case of equitable estoppel which precludes Rheem's Rule 12 motion.

**C. The AC alleges facts to support a claim for deceptive trade practices and fraudulent concealment.**

Rheem's attack on the very detailed AC on the grounds of an asserted lack of specificity under Fed. R. Civ. P. 9(b) is misplaced. First, Rule 9(b) does not apply to FDUPTA claims even if fraud is pled in the Complaint.[22] *Galstaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009); *Medimport S.R.L. v. Cabreja*, 929 F. Supp. 2d 1302 (S.D. Fla., 2013). The "FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts such as fraud, and therefore, 'the plaintiff need not prove the elements of fraud to sustain an action under the statute.'" *Florida v. Tenet Healthcare Corp.*, 420

[22] There is a split in the Southern District of Florida, as other courts have reached the opposite result. *Llado–Carreno v. Guidant Corp.*, No. 09–20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011). If this Court decides that Rule 9(b) applies, Plaintiff have met the heightened pleading standard as set forth in section III(c) of this brief.

F. Supp. 2d 1288, 1310 (S.D. Fla.2005). Because Rule 9(b) does not apply to FDUTPA claims, its requirements cannot serve as a basis to dismiss those claims.

Second, to satisfy Rule 9(b), Plaintiffs must plead the circumstances of the fraud with particularity. *Ziembe v. Cascade Int'l Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). A plaintiff "need not prove his allegations in the complaint but must provide particular facts so the Court is not 'left wondering whether a plaintiff has offered mere conjecture or a specifically pleaded allegation on an essential element of the lawsuit.'" *Grills v. Philip Morris USA, Inc.* 645 F. Supp. 2d 1107, 1121, (M.D. Fla. 2009) (*quoting Mitchell v. Beverly Enters.*, 248 Fed. Appx. 73, 75 (11th Cir. 2007) (q*uoting United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1313 n. 23 (11th Cir.2002)). The AC has more than adequate detail of the circumstances of the fraud, especially when the claim is one for fraudulent omission and the matter is in a pre-discovery phase. *See e.g. Maldonado v. Dominguez*, 137 F.3d 1 (1st Cir. 1997) ("While Fed. R. Civ. P. 9(b) proscribes the pleading of 'fraud by hindsight,' we also cannot expect plaintiffs to plead "fraud with complete insight" before discovery is complete.").

The AC provides the required notice. It alleges that Rheem knew that the design defects in its evaporator coils were causing them to develop formicary corrosion, making them unreasonably susceptible to premature rupture and refrigerant leaks when used under normal conditions. (ECF No. 20 ¶¶ 12, 13, 73, 74, 84). Despite this knowledge, Rheem did not inform its customers of the coils' susceptibility to formicary corrosion, its causes, or of the current availability of replacement coils that are not so susceptible. (ECF No. 20 ¶¶ 14, 15, 19, 41, 46, 52, 60). Instead, Rheem represented via its user manuals, websites, brochures, specifications or models that its evaporator coils were fit for the ordinary purpose in which such goods are used. (ECF No. 20 ¶ 75). For example, Rheem represented on its website:

> We simply offer the finest air conditioning solutions in the business. Top-quality, innovative products with the latest technology, dependable performance, great warranties and excellent service and support. All of this is why we confidently say, "Relax, It's Rheem."

(ECF No. 20 ¶ 76).

When a defective coil leaks to the point that it eliminates the Air Conditioner's ability to provide cold air within the warranty period, Rheem's standard practice is to misrepresent the root cause of the problem, and replace the refrigerant in the unit instead of the defective coil. (ECF No. 20 ¶¶ 17, 87). Even if Rheem replaced the defective coil in a Rheem Air Conditioner within the warranty period, the replacement coil was equally susceptible to formicary corrosion and likely to prematurely rupture and leak refrigerant under normal use. (ECF No. 20 ¶ 16). If the coil was replaced, by an authorized dealer, Rheem required the dealer to return the coil to it before Rheem would credit the dealer for the work performed. (ECF No. 20 ¶ 43). This enabled Rheem to maintain exclusive control over all evidence related to the defective coils. *Id.*

Plaintiffs did not and could not reasonably have discovered the defects at the time of purchase or delivery.[23] (ECF No. 20 ¶¶ 42, 87). If Plaintiffs had known that Rheem Air Conditioners contained defective Coils, Plaintiffs would not have purchased Rheem Air Conditioners. (ECF No. 20 ¶ 44).

Any more detail than this would be impossible for Plaintiffs to provide given the absence of discovery. The requirements of Rule 9(b) "must not abrogate the concept of notice pleading."

---

[23] Rheem argues that the Exhibits attached to the Amended Complaint show that Plaintiffs knew about formicary corrosion. Rheem contends that the Exhibits publically discuss the possibility of formicary corrosion. The Exhibits referred to by Rheem are industry documents which hardly establish dissemination to the public at large. Discovery is warranted to determine where the documents were published, when they were published, how they were published and if any Plaintiff saw the documents. Merely because a document is available on the Internet today does not mean that the document was available before Plaintiffs purchased the air conditioners with the defective evaporator coils

*Durham v. Business Management Assoc.*, 847 F.2d 1505, 1511 (11th Cir.1988), because the main purpose behind Rule 9(b) is to provide the defense with notice of the conduct complained of while protecting defendants from harm to their goodwill and reputation. *Wagner v. First Horizon Pharmaceutical*, 464 F.3d 1273, 1278 (11th Cir. 2006)

This is especially true where the claim is one of omission, as "[c]ourts have also recognized [] that Rule 9(b) does not require fraud-by-omission claims to 'specify the time, place and specific content of an omission as precisely as would a false representation claim.'" *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 961 (N.D. Ohio 2009) (citing *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D.Cal.2007)). Requiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission. *Id.* at 962. Indeed *Whirlpool* is directly on point and if anything the detail in this AC is greater than was found there,[24] as the AC informs Rheem of the time (never), place (nowhere)

[24] In *Whirlpool*, the Plaintiffs alleged that Whirlpool manufactured washers that had the propensity to create mold, Whirlpool knew about the defect, yet never disclosed it to consumers. In finding that the allegations met the particularity requirement of Rule 9(b), the court stated:

> Here, the Plaintiffs' fraud-by-omission claims are sufficient to meet Rule 9(b)'s particularity requirement. Those claims plead (1) that Whirlpool knew that design defects (in particular, the failure of the steel drum and boot to allow the washers to completely drain and rinse away detergent) in its washers were causing mold-problems. Doc. 66 at ¶¶ 36-38; (2) that despite this knowledge, Whirlpool did not disclose these supposed design defects or the resulting mold problems to the Plaintiffs at any time Doc. 66 at ¶ 39; (3) that the existence of the alleged design defects and resulting mold problems were material to the Plaintiffs' decision to purchase Whirlpool washers Doc. 66 at ¶ 40; and (4) that as a result of the design defects and resulting mold problems, the Plaintiffs overpaid for their washers Doc. 66 at ¶ 40. Thus, the Plaintiffs' fraud-by-omission claims notify Whirlpool of the time (never), place (nowhere), and content (nothing) of the alleged misrepresentations, the Plaintiffs' alleged reliance (materiality), the fraudulent scheme (Whirlpool's knowledge of the supposed defects and problems), its

and the content (nothing) of the misrepresentations. The allegations also inform Rheem that the misrepresentations were material, Rheem was aware of its fraudulent scheme and that Rheem failed to disclose it. The particularity requirements are met. *Id.*

**D. Plaintiff Justice has alleged causation under the FDUTPA**

Rheem argues that the FDUPTA count in the AC does not sufficiently allege causation because Plaintiffs have not "allege[d] that they saw or heard a specific fraudulent statement made by Rheem, pursuant to which they acted to their detriment." (ECF No. 25 at 22). This statement not only seeks to append a reliance requirement to the causation element when none exists[25], but it also assumes this is a case for fraudulent representation when in fact this is a deceptive trade practice claim where the issue is Rheem's silence. [26] *Davis v. Powertel, Inc.*,

---

> fraudulent intent (failure to disclose them), and the resulting injury (overpayment).

*Id.*, 684 F. Supp. 2d at 962.

[25] It is beyond dispute that FDUPTA does not require each plaintiff to rely on a false statement to establish causation. *See, e.g., Fitzpatrick v. General Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 973 (Fla. 1st DCA 2000), *review denied*, 794 So. 2d 605 (Fla.2001) ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); *State, Office of Attorney Gen., Dep't of Legal Affairs v. Commerce Commercial Leasing, LLC*, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."). To establish causation, a plaintiff need only allege that an objectively reasonable person would have been deceived by the false statement. *Fitzpatrick*, 635 F.3d at 1283. Indeed, a deceptive practice can cause a consumer damages even if the consumer does not rely on the deceptive practice when purchasing a particular product. *See Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 n.2 (S.D. Fla. 2010) (noting that deceptive marketing may injure consumers even without individual reliance upon misrepresentations where misrepresentations result in higher prices).

[26] The Amended Complaint alleges facts sufficient to establish a reasonable person would have been deceived by Rheem's silence in the fact of Rheem's knowledge at the time of sale of the defect. (ECF No. 20 ¶¶ 14, 20, 44, 46). The Amended Complaint explicitly states that if

776 So. 2d at 973 (Fla. 1st DCA 2000) ("[W]e conclude that there is a critical difference between a deceptive trade practice claim and a claim of fraud. A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.")

**E. Plaintiffs Allege a Valid Unjust Enrichment Claim**

Rheem argues that "[a] claim for unjust enrichment must be dismissed if an express contract is alleged in the complaint" and accuses Plaintiffs of "shotgun pleading."[27] Rheem is simply incorrect, especially at the pleading stage where pleading in the alternative is expressly authorized by Rule 8(d)(2) of the Federal Rules of Civil Procedure which provides that "a party may set out 2 or more statements of a claim or defense alternatively or hypothetically" and may even do so with inconsistent theories. *See also Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009).

The simultaneous pleading of breach of contract and unjust enrichment theories has been specifically blessed by the Eleventh Circuit. The court noted that:

> While it is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. That rule does not apply to unjust enrichment claims. "It is only upon a showing that an express contract exists

---

Plaintiffs had known that Rheem Air Conditioners contained defective coils, they would not have purchased them. (ECF No. 20 ¶ 44). These facts sufficiently establish causation under the FDUTPA. *In re Porsche Cars N.A., Inc. Plastic Tubes Products Liab. Litig.*, 880 F.Supp.2d 811, (S.D. Ohio 2012)( holding "[t]he Florida Plaintiff alleges that, had he known of the alleged coolant tube defect, he would not have purchased [the product] or would have insisted on paying less for it. These allegations are sufficient to demonstrate cause under the FDUTPA.").

[27] Rheem states without any analysis that the unjust enrichment count is a shotgun pleading. (ECF No. 25 at 25). A shotgun pleading is one in which it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). The mere inclusion of a common set of allegations "does not nearly rise to the level of a shotgun pleading." *Green v. C.B. Fleet Holding Co.*, 2008 WL 113668, at *2 n.1 (S.D. Fla. Jan. 8, 2008). The Amended Complaint details the elements of each count sufficient to apprise Defendant of the claims asserted against it.

> [between the parties] that the unjust enrichment ... count fails." Thus, to the extent that [the plaintiff] did have adequate legal remedies, those remedies did not bar its unjust enrichment claim.

*State Farm Mutual Automobile Insurance Company v. Physicians Injury Care Center, Inc.*, 427 Fed. App'x. 714, 722 (11th Cir.2011) (quoting *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998). *See also Hill v. Hoover Co.*, 899 F. Supp. 2d 1259 (N.D. Fla., 2012).[28]

In a variation of the same theme, Rheem also asserts unjust enrichment must be dismissed because the AC does not include the statement "no adequate remedy of law." Of course, whether or not there is an adequate remedy at law is yet to be determined, which is the very point of the alternative pleading permitted by the Eleventh Circuit in *State Farm*. Further, there is no requirement a Plaintiff must plead "no adequate remedy at law" to state a claim for unjust enrichment. To the contrary, "to the extent that [the plaintiff] did have adequate legal

---

[28] On a similar basis, Rheem argues that the deceptive trade practices claim warrants dismissal of the unjust enrichment claim because under FDUPTA Plaintiffs would have an adequate remedy at law. In support of its argument, Rheem cites two cases: *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011)(Florida law) and *DeLoach v. Gen. Motors*, 369 S.E.2d 484, 486 (Ga. Ct. App. 1988)(Georgia law). *Jovine* was decided before the Eleventh Circuit issued its opinion in *State Farm Mut. Auto. Ins., Co.*, 427 Fed. App'x. 714, 722 (11th Cir. 2011) which held that a plaintiff may plead unjust enrichment claims as well as claims providing a Plaintiff with an adequate remedy at law. Federal courts in Georgia have adopted the same view, holding that a plaintiff may plead alternative claims to unjust enrichment. *See e.g. Clark v. Aaron's, Inc.*, 914 F.Supp.2d 1301, 1309 (N.D. Ga. 2012) (While a party, indeed, cannot recover under both a breach of contract and unjust enrichment theory, a plaintiff may plead these claims in the alternative). Nevertheless, Rheem cites *DeLoach v. Gen. Motors Corp.*, 369 S.E.2d 484, 486 (Ga. Ct. App. 1988) for the proposition that an unjust enrichment claim should be dismissed if it is based upon the same allegations as a deceptive trade practices claim. *DeLoach* did not discuss unjust enrichment. *DeLoach* involved an appeal from a defendant's verdict in a case involving a defective new car. The plaintiffs sought recovery for fraud, breach of warranty, and violation of the Fair Business Practices Act. As such, Rheem's reliance on *DeLoach* is misplaced.

remedies, those remedies did not bar an unjust enrichment claim. *State Farm Mut. Auto. Ins. Co.*, 427 Fed. App'x at 722.[29]

## V. Plaintiffs have adequately alleged a claim for Declaratory Relief Pursuant to §2201

Plaintiffs have asked the court to declare the Rheem evaporator coils defective and to declare certain provisions of the warranty void as unconscionable and as a failure of their essential purpose. Plaintiffs also request that Rheem be ordered to notify all owners of the defects, to reassess all prior warranty claims and to pay the full cost of inspection, repairs and damages. Rheem attempts to defeat Plaintiffs' declaratory judgment request by arguing that declaratory relief is unavailable where the "issues are properly raised in other counts of the pleadings.[30]" (ECF No. 25 at 25).

---

[29] *Karhu v. Vital Pharms., Inc.*, Civ. No. 13-60768, 2013 U.S. Dist. LEXIS 112613 *21-22 (S.D. Fla. Aug. 9, 2013)(Cohn/Seltzer, J.), followed the Eleventh Circuit's *State Farm* holding and found that a claim for unjust enrichment was alleged, even though the complaint did not contain any allegation that there was no adequate remedy at law. The complaint contained the following allegations which are virtually identical to those found in the Amended Complaint in this case:

> 59. Plaintiff and Class members conferred benefits on Defendant by purchasing Meltdown.
>
> 60. Defendant has knowledge of such benefits.
>
> 61. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchase of Meltdown. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that Meltdown was a safe and effective treatment for fat loss when in fact it was ineffective and worthless, which caused injuries to Plaintiff and Class members because they would not have purchased Meltdown if the true facts had been known.

[30] Rheem's sole authority for its argument is *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012). But when the case is read in context, it actually supports Plaintiffs position. The court dismissed the complaint, not because there was an alternative remedy, but because Plaintiffs failed to establish an actual controversy, a prerequisite to awarding injunctive relief. In fact, declaratory relief was denied because Plaintiff was unable to establish a claim under the FDUTPA. According to the court, "Plaintiffs have failed to allege

Rheem's argument ignores the plain language of the Declaratory Judgment Act, 28 U.S.C. § 2201, which enables a district court to "'declare the rights . . . of any interested party . . . whether or not further relief is or could be sought.'" *Powell v. Cormack*, 395 U.S. 486, 517 (1969); *see also* Fed. R. Civ. P. 57 1937 Advisory Committee Notes ("the fact that another remedy would be equally effective affords no ground for declining declaratory relief. The demand for relief shall state with precision the declaratory judgment relief, cumulatively or in the alternative.") "Courts have held that the existence of another remedy does not preclude declaratory relief." *See Powell v. McCormack*, 395 U.S. 486, 517-18 (1969); C*ontinental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734, 737 (2d Cir.1992); *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103, 1112 (9th Cir.1987); *Tierney v. Schweiker*, 718 F.2d 449, 457 (D.C. Cir.1983). Indeed, Rule 8(d) of the Federal Rules of Civil Procedure provides that a Complaint may plead both alternative and inconsistent claims. *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009).

Declaratory relief is available where there is a live dispute between the parties. *Golden v. Zwickler*, 394 U.S. 103 (1969). A request for declaratory relief may be considered independently of whether other forms of relief are appropriate. *Powell*, 395 U.S. at 518. "It is well-established that existence of another adequate remedy does not preclude judgment for declaratory relief in cases where it is appropriate." *Syngenta Crop Prot., Inc. v. U.S. E.P.A.*, 444 F. Supp. 2d 435

---

a cause of action under the FDUTPA. Thus, Plaintiffs are not entitled to any relief under FDUTPA." *Id.*

The district court quoted the following language from *Fernando Grinber Trust Services*, "the court should not entertain an action for declaratory judgment on the issues which are properly raised in other counts before the court," but omitted the remainder of the quotation which provided "through which the plaintiff will be able to secure full adequate and complete relief."

(M.D.N.C. 2006). Even if the requested declaratory relief "would merely repeat the same contentions that Plaintiffs would attempt to simultaneously prove under their legal claims," that is not a basis to dismiss the claim. *See Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) (allowing plaintiff to maintain an independent equitable remedy where he or she "can demonstrate a good chance of being likewise injured in the future"). If a declaration could aid Plaintiff in the pursuit of injunctive relief, then "it is not duplicative." *Consumer Prot. Corp. v. Neo-Tech News,* No. 08-1983, 2009 WL 2132694, at *3 (D. Ariz. July 16, 2009). Accordingly, the AC alleges the right to declaratory relief pursuant to the Declaratory Judgment Act.

In addition, Rheem's argument continues to ignore the propriety of alternative pleading. There is a plethora of authority affirming the propriety of pleading declaratory relief along with counts seeking relief at law. See, e.g., *See Edwards v. Farmers Ins. Co.*, 08-CV-730-TCK-PJC, 2009 WL 4506218, at *7 (N.D. Okla. Nov. 24, 2009) ("the Court finds that claims for money damages and injunctive relief can be pled in the alternative and that it is premature to determine whether one of the claims fails as a matter of law. *See* Fed. R. Civ. P. 8(d)(2). Accordingly, the claim for injunctive relief is not futile.").[31] The alternative pursuit of injunctive and declaratory relief is particularly appropriate given that such relief is a ***remedy*** and not a cause of action. *See Vargas v. Wells Fargo Bank, N.A.*, C 12-02008 WHA, 2012 WL 2931220, at *6 (N.D. Cal. July 18, 2012) (denying motion to dismiss as premature because "[a]lthough plaintiffs designate their

---

[31] Contrary to Rheem's contention, "[i]t is well-established that existence of another adequate remedy does not preclude judgment for declaratory relief in cases where it is appropriate." *Syngenta Crop Prot., Inc. v. US EPA*, 444 F. Supp. 2d 435 (M.D.N.C. 2006). Even if certain declarations "would merely repeat the same contentions that Plaintiffs would attempt to simultaneously prove under their legal claims," that is not a basis to dismiss the DJA.

prayer for injunctive and declaratory relief as a claim, injunctive and declaratory relief are actually remedies.").[32]

Rheem also argues that the Plaintiffs failed to allege a future injury, apparently ignoring the explicit allegations of the AC that Plaintiffs will suffer an injury if declaratory relief is not granted.[33] Further, Rheem misunderstands what it means to be at risk of a future injury. *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir. 1991) (allowing plaintiff to maintain an independent DJA remedy where he or she "can demonstrate a good chance of being likewise injured in the future"); *Shephard v. U.S. Olympic Committee*, 94 F. Supp. 2d 1136, 1149 (D. Colo. 2000) ("The

---

[32] See also *See Blue Grp. Res., Inc. v. Caiman Energy, LLC*, 2:11-CV-648, 2011 WL 5508977, at *3 (S.D. Ohio Nov. 10, 2011) ("Defendants have conflated the standard for obtaining injunctive relief with the *Twombly–Iqbal* standard in a manner that not only misconstrues the reach of the new Rule 12(b)(6) decisions, but would also have the effect of essentially obviating notice pleading in cases involving injunctive relief. Neither the United States Supreme Court nor the Sixth Circuit have expressly held that a plaintiff must plead the four injunctive relief factors as Defendants contend, and this Court declines the invitation to extend precedent in such an innovative direction."); *Lewis v. Bank of Am. NA*, CV 13-7717 CAS VBKX, 2013 WL 7118066 (C.D. Cal. Dec. 18, 2013) ("At this juncture, it would be premature to find that injunctive relief may not be granted with respect to plaintiffs' claim that Select breached the alleged loan modification agreement.").

[33] The Amended Complaint seeks declaratory relief in the form of rulings that:

a. Rheem ACs containing copper Coils are defective because they are unreasonably susceptible to formicary corrosion;

b. Certain provisions and limitations of Rheem's warranty are void as unconscionable and/or because they fail of their essential purpose;

c Rheem must notify Air Conditioner owners of the defect;

d The durational limitations on the warranty are removed;

e. Rheem will reassess all prior warranty claims and pay the full cost of repairs and damages;

f. Rheem will replace, at its own cost, any Class Member's Rheem Coil with a non-copper coil;

g. Rheem will pay the cost of inspection to determine whether any Class Member's Rheem Coils need replacement; and

h. Any limitation of damages or disclaimer or warranty by Rheem with regard to Rheem Coils are void.

(ECF No. 20 ¶ 190).

purpose of the Declaratory Judgment Act was to prevent the accrual of avoidable damages."). To hold otherwise would be contrary to the fact that the DJA "enlarge[s] the range of remedies available". *Prier v. Steed*, 456 F.3d 1209, 1212 (10th Cir. 2006) (citation omitted). Finally, "even with respect to past violations, injunctive relief may still be required to address the effects of those violations that persist. This Court is loathe at this stage in the proceedings to curtail its broad equity powers to fashion the most complete relief possible." *See In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 550 (D.N.J. 2004).[34]

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Motion to Dismiss is denied.

Respectfully submitted,

s/THEODORE J. LEOPOLD
THEODORE J. LEOPOLD (Florida Bar No.: 705608)
Email: tleopold@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Jeffrey A. Leon
Email: Jeff@Complexlitgroup.com
Jamie E. Weiss
Email: Jamie@Complexlitgroup.com
Zachary Jacobs
Email: Zachary@Complexlitgroup.com
Complex Litigation Group LLC

---

[34] In addition, Rheem ignores that the DJA claim is intended to effectuate relief under Plaintiffs' various causes of action by requesting a declaration that nullifies the limitations on the warranty as unenforceable and awards "other declaration[s] necessary to resolve the controversy." This Court has the power to impose this relief as it has the power to define "the rights and the other legal relations of any interested party seeking [ ] declaration." *Step-Saver Data Systems, Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (*quoting* 28 U.S.C. §2201).

515 Central Ave, Suite 300
Highland Park, Illinois 60035
Telephone: (847) 433-4500

Richard Burke
Email: Rich@Complexlitgroup.com
Complex Litigation Group LLC
1010 Market Street, Suite 1340
St. Louis, MO 63101

Jonathan Shub
Email: JShub@seegerweiss.com
Seeger Weiss LLP
1515 Market St., Suite 1380
Philadelphia, PA 19102
Telephone: (215) 564-2300
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically.

s/THEODORE J. LEOPOLD
THEODORE J. LEOPOLD (Florida Bar No.: 705608)
Email: tleopold@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401
Attorneys for Plaintiffs