**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: 9:14-CIV-80017-DIMITROULEAS

TERRANCE JUSTICE, ANDREA HATFIELD, DEBBIE FINN, KAREN DOTSON, MICHAEL YOUNG, STEVEN and NANCY ROSS, CHAS SUMMERS, and KELVIN WISE, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

RHEEM MANUFACTURING COMPANY,

Defendant.
______________________________________/

**DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Rheem Manufacturing Company ("Rheem") respectfully moves to dismiss the Second Amended Class Action Complaint [ECF No. 51] filed by Plaintiffs Terrance Justice ("Justice"), Andrea Hatfield ("Hatfield"), Debbie Finn ("Finn"), Karen Dotson ("Dotson"), Michael Young ("Young"), Steven and Nancy Ross ("Ross Plaintiffs"), Chas Summers ("Summers"), and Kelvin Wise ("Wise") (collectively "Plaintiffs") for the reasons stated in the following memorandum of law.

**MEMORANDUM OF LAW**

## I. INTRODUCTION

Although Plaintiffs have now been afforded three opportunities to plead their claims, the Second Amended Complaint ("SAC") once again falls short of stating any cause of action against Rheem and should be dismissed in its entirety, with prejudice. While the SAC names four additional plaintiffs, as shown in the redline comparison attached hereto as Exhibit A, it fails to cure any of the deficiencies the Court identified in its Order Granting in Part and Denying in Part Motion to Dismiss Amended Class Action Complaint [ECF No. 47] (the "Order").[1]

---

[1] Indeed, Plaintiffs still fail to allege that formicary corrosion caused their air conditioning units to stop cooling or fail. This alone is fatal to Plaintiffs' cause of action.

Rather, Plaintiffs use virtually identical allegations to re-plead the following nine causes of action: breach of express warranty (Count I); breach of the implied warranty of merchantability (Count II); breach of the implied warranty of fitness for a particular purpose (Count III); violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV); violation of the Alabama Deceptive Trade Practices Act (Count V); violation of the South Carolina Unfair Trade Practices Act (Count VI); violation of the Georgia Fair Business Practices Act (Count VII); unjust enrichment (Count VIII); and declaratory relief pursuant to 28 U.S.C. § 2201 (Count IX). Each of these nine claims remains legally deficient and must be dismissed for the reasons set forth below.

First, Plaintiffs' breach of warranty claims must be dismissed because Plaintiffs have not adequately alleged that they gave Rheem the required notice of the breach. Moreover, Plaintiffs have not pled that any breach occurred because the limited warranty covering Plaintiffs' air conditioners, which the Court has already found to be fully enforceable, limits Plaintiffs' remedy to repair or replacement of the allegedly defective copper evaporator coils. As the Court recognized, this limited warranty adequately provides Plaintiffs the benefit of their bargain, and the SAC contains no new allegations to support Plaintiffs' claims. And, separate and apart from that, as the Court recognized in its Order, because Plaintiffs are not in privity of contract with Rheem, they cannot maintain breach of implied warranty claims.

Second, Plaintiffs' claim for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") fails as a matter of law because the SAC lacks sufficient factual allegations regarding any affirmative, intentional fraudulent or deceptive conduct, and Plaintiffs do not allege any facts suggesting how Rheem's alleged fraudulent or deceptive conduct caused their purported injury, as required by Florida law. Moreover, the Court already found that Justice's claim is barred by the statute of limitations, and the SAC contains no new allegations to support a different conclusion.

Third, Plaintiffs previously conceded that their claims for violation of the Alabama Deceptive Trade Practices Act ("ADTPA"), South Carolina Unfair Trade Practices Act ("SCUTPA"), and Georgia Fair Business Practices Act ("GFBPA") are legally deficient and subject to dismissal. The SAC contains no additional allegations to cure these admitted deficiencies, and by Plaintiffs' own admission, Counts V, VI, and VII should be dismissed.

Fourth, Plaintiffs cannot maintain an unjust enrichment claim because of the express, enforceable warranty governing their claims and the availability of adequate remedies at law.

Fifth, and finally, Plaintiffs fail to state a claim for declaratory judgment because the declaratory relief they seek is indistinct from the relief sought in other counts of the SAC, and Plaintiffs have not alleged any threat of future injury.

Accordingly, each and every one of Plaintiffs' claims should be dismissed, with prejudice.[2]

## II. SUMMARY OF FACTS ALLEGED

According to the SAC, other than the conclusory, self-serving allegation that Plaintiffs were not told at the time of purchase that their air conditioner units (the "Rheem Units") allegedly contained evaporator coils that were unreasonably susceptible to formicary corrosion (SAC ¶¶ 47, 52, 58, 66, 72, 79, 85, 91), Plaintiffs' claims are factually distinct from one another.

Justice alleges that he purchased a Rheem Unit from All Year Cooling in Ft. Lauderdale, Florida in May 2009. SAC ¶ 51. Justice admits that, at the time his Rheem Unit was installed, he received a document titled "Limited Warranty – Parts" (the "Warranty"). SAC ¶ 53. The Warranty provides, in relevant part:

> RHEEM SALES COMPANY, INC. warrants the Covered Equipment to be free from defects in materials and workmanship, and will repair or replace, at its option, ANY PART of Covered Equipment installed in residential (not commercial) applications which fails in normal use and service within the Applicable Warranty Periods.

SAC Exh. 5.[3] Furthermore, the Warranty states, in all capital letters:

---

[2] Indeed, in addition to this Court's August 22, 2014 Order dismissing almost all of Plaintiffs' claims, similar claims against other air conditioner manufacturers continue to be dismissed in other forums, including the Eastern District of Kentucky, Middle District of Florida, Northern District of Alabama, and Central District of California. *See* Order Granting Defendants' Motion to Dismiss Amended Complaint, *Pastor-Richard, et al. v. Goodman Global, Inc., et al.*, Case No. 2012-268 (E.D. Ky. July 3, 2013); Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, *PB Prop. Mgmt., Inc. v. Goodman Mfg. Co. et al.*, Case No. 3:12-cv-1366 (M.D. Fla. Aug. 28, 2013); Memorandum Opinion, *Selby v. Goodman Mfg. Co. LP, et al.*, Case No. 2:13-CV-2162-RDP (N.D. Ala. June 17, 2014); Order Granting in Part and Denying in Part Motion to Dismiss, *McVicar v. Goodman Global, Inc. et al.*, Case No. SACV 13-1223-DOC (C.D. Cal. Aug. 6, 2014). True and correct copies of the Eastern District of Kentucky, Middle District of Florida, Northern District of Alabama, and Central District of California Orders are attached hereto as Exhibits B, C, D, and E, respectively.

> [RHEEM'S] SOLE LIABILITY WITH RESPECT TO DEFECTIVE PARTS OR FAILURE SHALL BE AS SET FORTH IN THIS LIMITED WARRANTY, AND ANY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES ARE EXPRESSLY EXCLUDED.

*Id.* (emphasis added).

According to the allegations of the SAC, approximately three years after it was installed, in February 2012, Justice's Rheem Unit stopped cooling. SAC ¶¶ 54-55. Justice claims that, after initially misdiagnosing the problem, service technicians from Taylor Made AC replaced a "leaking" evaporator coil. *Id.* Justice then alleges that, more than a year and a half later, in September 2013, his Rheem Unit stopped cooling again, and this time a technician from All About AC replaced a "leaking coil." SAC ¶ 56. Justice does not specifically allege that he paid anything other than the cost of labor for the evaporator coil replacements, or that he experienced any problems with his Rheem Unit after the coil replacement in September 2013.[4]

Hatfield alleges that she purchased her Rheem Unit from Beyer H.V.A.C. in Hazel Green, Alabama in July 2010. SAC ¶ 57. Hatfield acknowledges that, at the time her Rheem Unit was installed, she received a copy of the Warranty. SAC ¶ 59; SAC Exh. 6. Hatfield contends that her Rheem Unit stopped cooling in July 2011, and that she experienced "numerous problems, including a leaking coil." SAC ¶ 60. In November 2011, White's Refrigeration allegedly filled Hatfield's Rheem Unit with refrigerant and contacted Rheem to "coordinate a replacement" Rheem Unit and evaporator coil, which was installed in March 2012, at which time Hatfield received another Warranty.[5] SAC ¶¶ 61-63; SAC Exh. 7. Hatfield does not allege that she paid anything other than the cost of labor for the evaporator coil replacement. Approximately eighteen months later, in September 2013, Hatfield's Rheem Unit allegedly stopped cooling again, and another company, Garrison & Garrison, Inc., allegedly diagnosed a "leaking coil." SAC ¶ 64. Hatfield does not allege that she paid any money to have the Rheem

---

[3] Pursuant to Federal Rule of Civil Procedure 10(c), a copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes, including a Rule 12(b)(6) motion. *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).

[4] The SAC's allegations with respect to Plaintiff Justice are identical to those of the dismissed Amended Complaint. *See* Exh. A.

[5] Plaintiffs' allegation that Hatfield received the Warranty for the first time in March 2012 (SAC ¶ 62) is inconsistent with their allegation that she received a copy of the Warranty when her Rheem Unit was installed in July 2010 (SAC ¶ 59).

Unit repaired in September 2013, or that she experienced any problems with her Rheem Unit after September 2013.[6]

Finn alleges that she purchased two Rheem Units in October 2010 from Preferred Aire, Inc. in Hilton Head Island, South Carolina. SAC ¶ 65. The Rheem Units were installed in November 2010. SAC ¶ 67. Finn claims she did not receive a copy of the Warranty from Preferred Aire, Inc. SAC ¶¶ 68, 70. In May 2013, more than two and a half years after the Rheem Units were installed, one of Finn's Rheem Units stopped cooling, and a technician from Preferred Aire allegedly replaced the refrigerant and an evaporator coil. SAC ¶ 69. Finn does not allege that she paid anything for the evaporator coil replacement. Finn does not contend that she experienced any problems with that Rheem Unit after the evaporator coil replacement in May 2013, and she does not allege that she has ever experienced any problem with her other Rheem Unit.[7]

Dotson contends that she purchased two Rheem Units in 2007 that were later installed in her home, then under construction. SAC ¶ 71. Dotson alleges that she was not given a copy of the Warranty at the time she purchased the Rheem Units, and that "at some point in 2009" one of the Rheem Units stopped cooling. SAC ¶¶ 73-74. The evaporator coil in one of her Rheem Units was allegedly replaced on June 24, 2009. SAC ¶ 74. Almost four years later, in May 2013, that Rheem Unit allegedly stopped cooling, and a service technician from D&W Airflow diagnosed the problem as a "leaking coil." SAC ¶ 76. Dotson claims that she contacted Rheem in November 2013, and was informed that Rheem would not cover the cost of labor or installation for a new evaporator coil for that Rheem Unit. SAC ¶ 77; SAC Exhs. 5-7. Dotson does not allege that she experienced any problems with that Rheem Unit after that point in time, and she does not allege that she has ever experienced any problem with her other Rheem Unit. Dotson further fails to allege that she paid anything other than the cost of labor for an evaporator coil replacement.[8]

---

[6] The SAC's allegations with respect to Plaintiff Hatfield are identical to those of the dismissed Amended Complaint. *See* Exh. A.

[7] The SAC's allegations with respect to Plaintiff Finn are identical to those of the dismissed Amended Complaint. *See* Exh. A.

[8] The SAC's allegations with respect to Plaintiff Dotson are identical to those of the dismissed Amended Complaint. *See* Exh. A.

Young alleges that he purchased his Rheem Unit from Mobile Home Elec. & Air Inc. on May 3, 2010, at which time he was allegedly not given a copy of the Warranty. SAC ¶¶ 78, 80. Young contends that "around September 2011," his Rheem Unit ceased cooling and the coil was replaced. SAC ¶ 91. Approximately two years later, in August 2013, Young claims that his Rheem Unit ceased cooling again, and was replaced with a tin-plated coil by another company, Hometown Air & Electric. SAC ¶ 83. Young contends that he paid for refrigerant replacement at that time, but does not allege that he paid any amounts to have the Rheem Unit's evaporator coil replaced. *Id.* Young does not allege that he experienced any problems with his Rheem Unit after the coil was replaced in August 2013.

The Ross Plaintiffs claim that they purchased a Rheem Unit from Aspen Air in September 2010, at which time they were allegedly not given a copy of the Warranty. SAC ¶¶ 84, 86. A year later, "around September 2011," their Rheem Unit allegedly stopped cooling and the coil was replaced. SAC ¶ 87.[9] The Ross Plaintiffs allege that almost three years later, in July 2014, the Rheem Unit ceased cooling again, and a service technician purportedly diagnosed the problem as a "leaking coil." SAC ¶ 89. The service technician allegedly contacted Rheem, and Rheem reduced the cost of the service technician's labor. *Id.* The Ross Plaintiffs acknowledge that the Rheem Unit's coil was replaced with an aluminum coil, and do not allege that they paid anything other than labor costs for either replacement coil to be installed in the Rheem Unit. *Id.*

Summers contends that he purchased a Rheem Unit in November 2010, but does not allege from whom the unit was purchased. SAC ¶ 90. In "early 2011," Summers' Rheem Unit allegedly stopped cooling and its coil was replaced. SAC ¶ 93. Summers claims that he paid for the cost of replacement refrigerant, but does not allege that he paid anything for the coil replacement. *Id.* Summers alleges that he did not receive a copy of the Warranty at the time the Rheem Unit was installed or the coil was replaced. SAC ¶¶ 92, 94. In August 2012, Summers' Rheem Unit allegedly stopped cooling again, and the coil was replaced. SAC ¶ 95. The only amounts Summers alleges he paid for the coil replacement were for labor. *Id.* In October 2014, Summers claims that his Rheem Unit again stopped cooling, but does not allege that he ever contacted Rheem regarding this problem. SAC ¶ 96.

---

[9] It is not clear whether the Ross Plaintiffs were given a copy of the Warranty at the time of the coil replacement in September 2011, as the SAC's allegation relates to Plaintiff Dotson. SAC ¶ 88.

Wise alleges that he purchased a Rheem Unit from All Year Cooling in February 2012. SAC ¶ 97. Wise's Rheem Unit was allegedly installed in March 2012, at which time he contends he was not given a copy of the Warranty. SAC ¶¶ 97, 99. Wise claims that his Rheem Unit stopped cooling in November 2013. SAC ¶ 100. All Year Cooling allegedly diagnosed the problem as a "leaking evaporator coil" and replaced the coil. *Id.* Wise does not allege that he paid anything other than labor for the evaporator coil replacement, or that he has experienced any problems with his Rheem Unit since the evaporator coil was replaced in November 2013.

None of the Plaintiffs make any allegation that formicary corrosion caused the evaporator coils to fail or the Rheem Units to stop cooling. The SAC also fails to specifically allege that five of the Plaintiffs—Justice, Finn, Young, Summers, and Wise—contacted or notified Rheem at any time regarding the problems they were allegedly having with their Rheem Units, or that any of the eight Plaintiffs gave Rheem notice of the claims they purport to assert in the SAC.[10] To make matters worse, the SAC fails to allege that Rheem denied any of the eight Plaintiffs a replacement evaporator coil at any time.

Although Plaintiffs concede that Rheem provides a warranty with its products, SAC ¶ 133, Plaintiffs argue that "once a consumer's warranty is expired, they are left with a defective product that requires a new evaporator coil, but no remedy offered by Rheem." SAC ¶ 19. At the same time, however, Plaintiffs acknowledge that Rheem has, since the fall of 2013, been using replacement coils that are manufactured out of aluminum, which is not susceptible to formicary corrosion. SAC ¶¶ 11, 15, 126.

Faced with these facts, Plaintiffs plead generally that "air conditioner manufacturers such as Rheem have traditionally manufactured evaporator coils using copper tubing," which are allegedly "uniquely vulnerable" to a type of degradation known as "formicary corrosion" that causes coils to leak refrigerant. SAC ¶¶ 4-6. And, Plaintiffs claim that Rheem knew about this alleged defect but failed to disclose it to purchasers. SAC ¶¶ 12, 15-17, 21, 47, 52, 58, 66, 72, 85, 91, 98, 129, 139.[11]

---

[10] In fact, the SAC alleges that when the Ross Plaintiffs contacted Rheem regarding their Rheem Unit, Rheem reduced the labor cost associated with replacing the evaporator coil. SAC ¶ 89.

[11] Nevertheless, Plaintiffs rely on—and attach to the SAC—various written materials, some of which were published before Plaintiffs bought their Rheem Units, regarding the possibility of formicary corrosion affecting copper evaporator coils in air conditioning units. SAC ¶¶ 5, 9-10, 117-21; SAC Exhs. 1-4.

Based on these allegations, Plaintiffs argue that Rheem "has failed to timely honor its express and implied warranties," that "the warranty has failed of its essential purpose," and that the limitations in the warranty are "ineffective," "unenforceable," and unconscionable." SAC ¶¶ 20, 137-38, 144-46. Plaintiffs also argue that the statute of limitations for their claims was tolled because Rheem and its agents "affirmatively misrepresented the root cause of the problem," and Rheem "contractually obligated itself to a warranted period of time greater than the statute of limitations." SAC ¶¶ 128, 131-32.

Beyond these conclusory, self-serving allegations, the SAC contains no additional details to support Plaintiffs' claims. At bottom, Plaintiffs' allegations in the SAC are just as general and conclusory as those that the Court found insufficient in the Amended Complaint, and the SAC should be dismissed, with prejudice. *See* Exh. A.

## III. ARGUMENT

To survive a motion to dismiss, a complaint must contain facts that sufficiently "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *O'Boyle v. Bradshaw*, 952 F. Supp. 2d 1310, 1313 (S.D. Fla. 2013) (Dimitrouleas, J.). "When the allegations of the complaint, however true, could not raise a claim for entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Under this standard, "a plaintiff's obligation to provide the 'grounds' for 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *Hasbun v. Recontrust Co., N.A.*, No. 11-60488-CIV, 2011 WL 3837158, at *1 (S.D. Fla. Aug. 24 2011) (Dimitrouleas, J.). That is, "a complaint's factual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. Although the well-pled factual allegations in a complaint are to be accepted as true, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" must be disregarded. *Sultan v. Safeco Surplus Lines Ins. Co.*, No. 10-60561-CIV, 2010 WL 9489974, at *2 (S.D. Fla. Dec. 17, 2010) (Dimitrouleas, J.) (citing *Iqbal*, 556 U.S. at 678).

### A. Plaintiffs' Breach of Warranty Claims in Counts I-III Must be Dismissed

Plaintiffs' claim for breach of express warranty fails for two independent reasons. First, Plaintiffs fail to allege the requisite notice of the alleged breach of warranty. And, second, the Warranty contains a limitation of liability clause that precludes Plaintiffs from recovering the

relief they seek. Despite Plaintiffs' best efforts to plead around this express limitation of liability, the Court has already found that the Warranty is enforceable because it does not fail its essential purpose and because it is not unconscionable. Order at 7-10. Separate and apart from these grounds, Plaintiffs' claims for breach of implied warranty fail because Plaintiffs have not alleged that they were in privity with Rheem, which the Court recognized is required under Florida law to state a breach of implied warranty claim.[12] Order at 10-11. The SAC does not cure these deficiencies, and Counts I, II, and III should be dismissed, with prejudice.

**1. Plaintiffs' express warranty claim in Count I fails as a matter of law.**

**a. <u>Plaintiffs failed to give the required notice of the alleged breach of warranty</u>.**

Count I of the SAC should be dismissed because Plaintiffs failed to give notice to Rheem of the alleged breach of warranty as required by Florida law. To state a claim for breach of express warranty, Plaintiffs must allege, among other things, that they provided notice to the seller of the alleged breach. *Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1339-40 (S.D. Fla. 2011) (Cohn, J.); *Nichols v. Wm. Wrigley Jr. Co.*, No. 10-80759, 2011 WL 181458, at *4 (S.D. Fla. Jan. 19, 2011) (Cohn, J.); *see also* Fla. Stat. § 672.607(3)(a) (requiring that "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.").

This notice requirement is "a precondition of imposing liability," and "[t]he buyer bears the burden of showing that [it] gave the required notice" in fulfillment of this threshold

[12] Absent a choice of law provision in the Warranty, the Court must apply Florida law, the law of the forum state in which it sits, to Plaintiffs' claims, with the exception of Counts V, VI, and VII, which are based on specific Alabama, South Carolina, and Georgia statutes. *See, e.g., Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Erie R.R. v. Tomkins*, 304 U.S. 64, 74-77 (1938); *De Leon v. Bank of Am., N.A.*, No. 6:09-cv-1251-Orl-28KRS, 2009 WL 3822392, at *5 (M.D. Fla. Nov. 16, 2009). Therefore, Rheem has briefed most of the issues raised herein under Florida law without conducting a choice of law analysis. However, such an analysis may be required in the future in connection with motions asserted under Federal Rule of Civil Procedure 23 or otherwise, and accordingly Rheem does not waive its right to assert that class certification is inappropriate, among other reasons, due to the need to apply the laws of different states to the putative class members' claims. *See, e.g., Karhu v. Vital Pharms., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *7-*8 (S.D. Fla. Mar. 3, 2014) (Cohn, J.); *see also Alligood v. Taures Int'l Mfg., Inc.*, No. CV 306-003, 2009 WL 8387645, at *4 (S.D. Ga. Mar. 4, 2009) (denying class certification and recognizing that state laws "differ substantially" with respect to express and implied warranties).

condition. *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. 2d DCA 1980). Specifically, the buyer must show that he gave the manufacturer notice before the loss based on the alleged breach. *Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*, 576 So. 2d 1330, 1330-31 (Fla. 3d DCA 1991). If the manufacturer could have remedied the breach and prevented the loss, the buyer is "barred from any remedy." *Id.* Moreover, "notice of generalized problems/concerns by an intermediary to a defendant/manufacturer without identifying the plaintiff/end user does not satisfy a plaintiff's notice requirement to bring a claim of breach of express warranty. *McKay v. Novartis Pharms. Corp.*, 934 F. Supp. 2d 898, 913 (W.D. Tex. 2013) (applying a similar statutory notice provision); *see also* Exh. D at 5 (recognizing that pleading a defendant's general awareness of alleged defects does not substitute the statutory notice requirement).

Plaintiffs' SAC contains one boilerplate notice allegation: "Plaintiffs and members of the Classes notified Rheem of the breach." SAC ¶ 153. Beyond this one conclusory statement, the SAC is entirely devoid of any facts suggesting that Plaintiffs followed the notice procedures set forth in the Warranty, or that Rheem was afforded an opportunity to remedy the alleged breach as required by Florida law.[13] Although Plaintiffs generally allege multiple contacts with third party service companies regarding repairs to their Rheem Units, the SAC contains not one allegation suggesting that any of the Plaintiffs provided notice to Rheem or these third parties of a breach of Rheem's Warranty. *See* Exh. D at 5 (finding repair requests alone insufficient to constitute notice to the seller or manufacturer).[14] Indeed, each of the Plaintiffs was provided with a replacement coil in accordance with the Warranty's provisions, and the SAC does not allege that any of the Plaintiffs paid for the replacement coil itself. Essentially, what Plaintiffs seek to do is convert a service call to a third party into notice to Rheem of a breach of warranty. Such a result is untenable and would abrogate the notice requirement entirely.

---

[13] *Compare* Exh. C at 6 (finding that the plaintiff stated a claim for breach of express warranty where the complaint contained allegations regarding written notice to the defendant manufacturers of the defect and a subsequent offer by the defendants to settle the dispute prior to litigation).

[14] The statute interpreted by the Northern District of Alabama is modeled on the same Uniform Commercial Code section as Fla. Stat. § 672.607(3)(a) and the provisions of the two statutes are virtually identical.

Thus, Plaintiffs have still not met their burden to show that they gave Rheem the required notice of an alleged breach of warranty. As a result, Count I of the SAC must be dismissed, with prejudice. *See Jovine*, 795 F. Supp. 2d at 1339-40; *Nichols*, 2011 WL 181458, at *4; *E. Air Lines*, 532 F.2d at 973; *Gen. Matters*, 382 So. 2d at 1264; *Hapag-Lloyd*, 576 So. 2d at 1331; *see also Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) ("The express warranty claim was properly dismissed because plaintiffs failed to allege that they ever presented their vehicles to a Ford dealership for repair or that the Ford dealership failed to make the repair.").

**b. <u>The Warranty's limitations expressly bar the relief Plaintiffs seek</u>.**

Count I also fails as a matter of law because the express terms of the Warranty, which the Court has already found to be enforceable, preclude the relief Plaintiffs are seeking. *See* Order at 7-10; *see also* Exh. B at 3 (recognizing that limited warranty barred requested relief); Exh. E at 15 (same). "Under Florida law, a written warranty is treated as a contract between buyer and seller, and therefore may, by its terms, limit the remedies available." *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1318 (S.D. Fla. 2009) (Gold, J.); *see also* Fla. Stat. § 672.3169(4) (noting that "[r]emedies for a breach of warranty can be limited . . ."); Fla. Stat. § 672.719(a) (stating that the warranty "may . . . limit or alter the measure of damages recoverable . . . by limiting the buyer's remedies to . . . repair and replacement of nonconforming goods or parts.").

The Rheem Units' Warranty is clear and unequivocal, and provides that Rheem "will repair or replace, at its option, ANY Part of the Covered Equipment installed in residential . . . applications which fails in normal use." SAC Exhs. 5-7. Moreover, the Warranty states, in all capital letters:

> THE MANUFACTURER'S SOLE LIABILITY WITH RESPECT TO DEFECTIVE PARTS OR FAILURE SHALL BE AS SET FORTH IN THIS LIMITED WARRANTY, AND ANY CLAIMS FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES ARE EXPRESSLY EXCLUDED.

*Id.*

Judge Gold considered the enforceability of a warranty with a similar limitation of remedy in a putative class action against a motorcycle manufacturer asserting breach of warranty claims based on an alleged design flaw. *David*, 629 F. Supp. 2d at 1318. Judge Gold, in ruling that the plaintiff was limited to the recovery set forth in the applicable warranty, explained:

> [T]he Warranty expressly . . . prescribes a remedy limited to repair or replacement of select parts, and states that it does not cover incidental or consequential damages. . . . Therefore, if a defect allegedly exists in the frame of the motorcycle, America Suzuki must repair that defect or replace the frame, but is under no obligation to replace the motorcycle in its entirety. . . . Plaintiff's request for relief that Defendants "refund the purchase price" of Plaintiff's motorcycle or replace the motorcycle is unavailable under the express terms of the written warranty.

*Id.* at 1319.

The same is true here. Plaintiffs' sole remedy—to the extent they are entitled to one[15]—is limited to the repair or replacement of their evaporator coils as provided for by the express terms of the Warranty. Order at 7-8 (finding the Rheem Warranty enforceable). Indeed, the SAC alleges no new facts that, if taken as true, would render the Warranty's limitations unenforceable. Because the Warranty bars the monetary and declaratory relief Plaintiffs seek, Counts I, II, and III of the SAC must be dismissed, with prejudice. *See id.*; *see also* Exh. A.

**c. <u>The Warranty's limitation of remedy does not cause the Warranty to fail its essential purpose</u>.**

Although the Court found that the Warranty's remedy does not fail its essential purpose, (Order at 7-8), Plaintiffs continue to assert that this purported failure renders the Warranty's limitations ineffective. SAC ¶¶ 20, 140, 144-45, 155, 166, 178. Under Florida law, however, a warranty does not fail simply because the product at issue allegedly failed. *Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 404 (E.D. La. 1998) (applying Florida law). Rather, to show that the Warranty failed of its essential purpose, Plaintiffs must establish that the Warranty provides no remedy at all in the event that a component of the Rheem Unit fails. *See id.*

Here, the SAC alleges that the evaporator coils in each of Plaintiffs' Rheem Units were replaced at various times between 2009 and November 2013. SAC ¶¶ 55-56, 62, 69, 74, 81, 83, 87, 93, 95, 100. Plaintiffs have not alleged a single attempt to repair or replace any evaporator coils after any replacement that took place in or after the fall of 2013. This is not surprising given that Plaintiffs allege that "Rheem began in the fall of 2013 to sell replacement coils

---

[15] As explained above, Plaintiffs do not allege that formicary corrosion or an unreasonable susceptibility to formicary corrosion—the alleged defect of which they complain—caused the evaporator coil in the Rheem Units to fail, or that it caused the Rheem Units to stop cooling.

manufactured from aluminum," which are "not susceptible to formicary corrosion."[16] SAC ¶¶ 11, 15. Based on Plaintiffs' own allegations, then, Plaintiffs' Rheem Units—aside from the two units purchased by Finn and Dotson, which have never experienced any problems—can be successfully repaired. Indeed, the Court recognized as much when it stated:

> According to the allegations, Rheem is able to repair or replace components of Rheem ACs in order to render the units functional and capable of providing cooling. The allegations reveal that Plaintiffs' Rheem ACs functioned normally, without any repair or replacement, for periods ranging from one (1) year to nearly (4) years and that repairs or replacements were provided when the units ceased cooling. These allegations exhibit a functioning warranty that led to repairs, rather than a warranty that failed to provide Plaintiffs with meaningful recourse whenever their Rheem ACs ceased cooling.

Order at 8 (emphasis added).

Plaintiffs make no new allegations in the SAC to alter the Court's previous analysis. *See* Exh. A. As a result, Plaintiffs have not shown that the Warranty's remedy fails of its essential purpose, and Counts I-III should be dismissed, with prejudice. *See Richter v. Monaco Coach Corp.*, No. 5:08-cv-207-Oc-10GRJ, 2009 WL 1537894, at *4 (M.D. Fla. June 2, 2009) (finding defendant's limited warranty did not fail its essential purpose where plaintiff reported problems with the warranted equipment to defendant, the problems were fixed, and plaintiff "ha[d] not reported any problems with the [warranted equipment] since the third repair"); *David*, 629 F.

---

[16] Plaintiffs do not, and cannot, reconcile their argument that the Warranty fails its essential purpose "because no remedies offered by Rheem give purchasers of Rheem ACs the benefit of their bargain, *i.e.*, a merchantable air conditioner," with their allegation that "Rheem began in the fall of 2013 to sell replacement coils manufactured from aluminum," which is "not susceptible to formicary corrosion." *Compare* SAC ¶ 144 *with* ¶¶ 11, 15. Instead, Plaintiffs add even more allegations regarding coils that were purportedly replaced pursuant to the Warranty, and Plaintiffs admit that at least two of these replacements was done with a coil made out of a material other than copper. SAC ¶¶ 81, 83, 87, 89, 93, 95, 100.

Supp. 2d at 1319 n.11.[17]

**d. The Warranty is not unconscionable.**

Despite the Court's finding that the Warranty is not unconscionable (Order at 8-10), Plaintiffs attempt once again to bypass the enforceability of the Warranty's express limitations and exclusions based on the Warranty's purported unconscionability. To do so, Plaintiffs must assert new allegations to establish both procedural and substantive unconscionable defects in the Warranty. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir. 2010); *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989) (finding that unconscionability exception is meant to provide relief from a contractual provision only where "no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice."). Plaintiffs have not done so.

***i) The Warranty is not procedurally unconscionable.***

To determine whether an agreement is procedurally unconscionable, courts consider: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Pendergast*, 592 F.3d at 1135.

Plaintiffs attempt to plead procedural unconscionability with a conclusory allegation that there was a disparity in the parties' relative bargaining power. SAC ¶ 137. Florida law is clear, however, that "mere inequality in bargaining power . . . is not a sufficient reason" to hold a warranty's limitation of remedy unenforceable. *TGB Marine, LLC v. Midnight Express Power Boats, Inc.*, No. 08-60940-CIV, 2008 WL 3889578, at *5 (S.D. Fla. Aug. 20, 2008) (Cohn, J.)

---

[17] In addition to the foregoing, as set forth above, Plaintiffs fail to allege whether, or to what extent, they attempted to make a claim under the Warranty for the repair or replacement of their allegedly defective evaporator coils. Significantly, the remedy provided for in a limited warranty cannot fail of its essential purpose when the consumer does not submit a warranty claim or otherwise invoke the warranty's provisions. *See Typographical Serv., Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983); *David*, 629 F. Supp. 2d at 1319 n.11; *Richter*, 2009 WL 1537894, at *4. Although Hatfield, Dotson, and the Ross Plaintiffs contend that Rheem was contacted regarding their Rheem Units (SAC ¶¶ 62, 77, 89), the SAC does not contain any specific allegations regarding whether these Plaintiffs submitted a claim as required by the Warranty.

(rejecting plaintiff's argument that boilerplate arbitration provision in a purchase and sale agreement rendered the agreement procedurally unconscionable); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025-27 (Fla. 4th DCA 2005) (holding that a cell phone service agreement was not procedurally unconscionable, although "[t]here [was] no doubt that AT&T had almost unilateral bargaining power."). Accordingly, Plaintiffs have failed to adequately plead procedural unconscionability. *See* Order at 10, n. 4 (finding no substantive unconscionability and, "at best," only "minor procedural unconscionability"); *see also* Exh. A.[18]

***ii) The Warranty is not substantively unconscionable.***

Plaintiffs also fail to establish that the Warranty's provisions are substantively unconscionable. *See* Order at 10. It is well-settled law that a plaintiff alleging substantive unconscionability must prove that the terms of the contract are "so outrageously unfair as to shock the judicial conscience." *See, e.g., TGB Marine,* 2008 WL 3889578, at *5; *Pendergast*, 592 F.3d at 1139 (noting that a substantively unconscionable contract is one that "no man in his senses and not under delusion would make on one hand, and as no honest and fair man would accept on the other.") (internal citations omitted).

Indeed, Florida courts have found that similar limited warranty provisions are not substantively unconscionable. *See, e,g., Fotomat Corp. of Fla. v. Chanda*, 464 So. 2d 626, 630 (Fla. 5th DCA 1985) (finding no substantive unconscionablility in defendant's limited warranty because, among other reasons, "the limitation of liability provision was standard in the industry."). To that end, where a limited warranty does not leave the plaintiff without a remedy, it is not substantively unconscionable. *See, e,g., Topp, Inc. v. Uniden Am. Corp.*, No. 05-21698-CIV-MORENO, 2007 WL 3256849, at *4 (S.D. Fla. Aug. 23, 2007) (Moreno, J.); *see also* Fla. Stat. § 672.719 cmt. 1 ("[I]t is of the very essence of a sales contract that at least minimum adequate remedies be available . . . there [must] be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.").

Any claim, here, by Plaintiffs that the Warranty's standard industry limitations are "so outrageously unfair as to shock the judicial conscience" belies reason. As the Court stated:

[18] The undersigned is not aware of any binding precedent supporting the proposition that the failure of a third party retailer to provide a buyer with a copy of a manufacturer's warranty renders the otherwise enforceable limitations of the warranty unconscionable.

> The warranty requires Rheem to repair or replace any part that "fails in [its] normal use and service." . . . Those terms do not create an outrageous degree of unfairness for purchasers of Rheem ACs. Accordingly there is no substantive unconscionability. Absent any substantive unconscionability, the warranty is not void.

Order at 10 (emphasis added); *see also* SAC Exhs. 5-7 at 1. Indeed, this remedy strives to provide Plaintiffs precisely the benefit of their bargain: an air conditioning unit that functions "in normal use and service," or a "merchantable air conditioner." *See* SAC ¶ 144; *see* Order at 8 (finding that Rheem's Warranty provides Plaintiffs with a meaningful recourse in the event repairs are necessary). Nevertheless, Plaintiffs argue that they should be able to avoid the Warranty limitations because Rheem had knowledge of the alleged defect at the time Plaintiffs purchased their Rheem Units. SAC ¶ 139.[19]

Not only is this unidentified "defect" insufficient to meet the federal pleading standards, *Twombly*, 550 U.S. at 555, but this argument falls far short of establishing that the Warranty is "so outrageously unfair" as to render it unenforceable. *See TGB Marine,* 2008 WL 3889578, at *5; *see also* Exh. E at 15 (finding allegation that manufacturer knew of the defect at the time of sale insufficient to establish unconscionability).[20] Indeed, as set forth above, Plaintiffs' SAC does not establish—as it must—that the air conditioner, or its evaporator coil, is irreplaceable or irreparable under the Warranty due to some specifically known defect. To the contrary, according to the SAC, certain of Plaintiffs' Rheem Units have never experienced any problems at all, and those that did were repaired. SAC ¶¶ 51-100; *see also* Order at 10. In addition to that,

---

[19] The allegation that Plaintiffs "could not have known" about the Rheem Units' alleged susceptibility to formicary corrosion (SAC ¶ 163) is directly contradicted by their apparent acknowledgement that formicary corrosion is a known concern that has been publicly discussed. *See* SAC ¶¶ 5, 9-10, 117-21; SAC Exhs. 1-4.

[20] The SAC contains nothing more than a single conclusory allegation that Rheem "had knowledge of the design defect . . . at the time each Plaintiff purchased their respective air conditioning units." SAC ¶ 139. Plaintiffs do not allege any facts that support such a conclusion, but rather include one allegation regarding a statement purportedly made by a Rheem product manager in 2013—well after Plaintiffs each purchased their Rheem Units. SAC ¶ 127. These contradictory allegations do not and cannot establish unconscionability or failure of essential purpose. *See* Exh. B at 3 (finding that complaint did not sufficiently allege that limited warranty failed its essential purpose or was unconscionable where the plaintiffs' allegation provided no facts upon which an inference could be made that HVAC manufacturer knew, or had reason to know, of a defective evaporator coil in their units at the time they offered to sell the units to plaintiffs); *see also* Exh. E at 10.

by Plaintiffs own admission, any future evaporator coil problems will be resolved through the use of "replacement coils manufactured from aluminum," which are not susceptible to formicary corrosion. SAC ¶¶ 11, 15, 126. Therefore, the Warranty provides Plaintiffs an adequate remedy, and its limitations are fully enforceable. *See Pendergast*, 592 F.3d at 1139; *Topp*, 2007 WL 3256849, at *4; *see also* Order at 7-10.

**2. Plaintiffs' implied warranty claims independently fail as a matter of law because there is no privity between Plaintiffs and Rheem.**

In addition to the foregoing, Counts II and III of the SAC, which again purport to assert claims for breach of implied warranty, must be dismissed because Plaintiffs do not allege privity of contract between themselves and Rheem. *See* Order at 11 (dismissing implied warranty claims for failure to allege privity of contract). To be sure, a plaintiff may not maintain an action for breach of an implied warranty, under Florida law, in the absence of privity between the parties. *See, e.g., Mardegan v. Mylan, Inc.*, No. 10-14285-CIV, 2011 WL 3583743, at *6 (S.D. Fla. Aug. 12, 2011) (Martinez, J.); *see also Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 894 n.1 (11th Cir. 2006) ("Under Florida law, privity of contract is an essential element of a claim for breach of implied warranty.").

Here, Plaintiffs do not, and cannot, allege that any of the purported Class members purchased their Rheem Units directly from Rheem.[21] As a result, Plaintiffs fail to establish the requisite privity to maintain an action for breach of implied warranty, and Counts II and III should be dismissed, with prejudice. *See* Order at 11; *David*, 629 F. Supp. 2d at 1321-22; *Jovine*, 795 F. Supp. 2d at 1340 (holding that the absence of direct privity between a plaintiff consumer and a defendant manufacturer bars recovery on a claim for breach of implied warranty even when a plaintiff has properly pled all elements of the claim); *see also* Exh. D at 6-7 (dismissing a virtually identical breach of implied warranty claim due to a lack of privity between the consumer plaintiff and the defendant HVAC manufacturer); Exh. E at 15-17 (same).

[21] Plaintiffs Justice, Hatfield, Finn, Young, Ross, and Wise concede that they purchased their Rheem Units from third parties, not from Rheem. SAC ¶¶ 51, 57, 65, 78, 84, 97. The SAC does not contain any details regarding from whom Dotson and Summers purchased their Rheem Units.

**B. Plaintiffs Have Not Stated a Claim for Violation of FDUTPA**

Count IV of the SAC must be dismissed because Plaintiffs do not sufficiently plead adequate factual details to support their FDUTPA claim. Moreover, to the extent that the SAC purports to assert a FDUTPA claim on behalf of Plaintiff Justice, the Court has already found that such claim is barred by the statute of limitations, and the SAC contains no additional allegations that would lead to a different result.

**1. Plaintiffs fail to adequately plead Count IV.**

Plaintiffs' FDUTPA claim should be dismissed because the SAC again fails to include sufficient details to "state a claim that is plausible on its face," but rather impermissibly relies solely on "labels and conclusions." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *see also Nivia v. Nationstar Mortg., LLC*, No. 13-Civ-24080, 2014 WL 4146889, at *5-*6 (S.D. Fla. Aug. 21, 2014) (Cooke, J.) (dismissing FDUTPA claim with prejudice). In order to establish a FDUTPA claim, Plaintiffs must plead that they were injured by some "unfair method of competition, unconscionable act or practice, or unfair or deceptive act or practice." Fla. Stat. §§ 501.204(1), 501.211(2); *see also Montgomery v. New Piper Aircraft, Inc.*, 209 F.R.D. 221, 229 (S.D. Fla. 2002) (Roettger, J.) ("[T]he Court must determine that . . . each putative class member was exposed to the Defendants' advertising and marketing materials alleged to constitute a deceptive trade practice."). Plaintiffs have not done so.

Plaintiffs' FDUTPA claim appears to be based on the fact that Rheem allegedly did not disclose that the evaporator coils in its Rheem Units were unreasonably susceptible to formicary corrosion, the only alleged defect of which Plaintiffs complain. *See, e.g.,* SAC ¶¶ 16-17, 21. Yet, other than a general advertisement from Rheem's website, SAC ¶ 108, the SAC fails to set forth even <u>one</u> allegation of a specific fraudulent statement or representation made by Rheem regarding formicary corrosion or Rheem's evaporator coils, let alone any such statement or representation that Plaintiffs saw or heard and relied upon to their detriment. At bottom, the SAC does nothing more than recite legal buzzwords and general, conclusory statements regarding Rheem's alleged conduct and corresponding state of mind. SAC ¶ 183 ("acts and practices . . . constitute . . . fraudulent business practices in violation of the FDUTPA."). Indeed, Plaintiffs even fail to plead that formicary corrosion caused the evaporator coils in their Rheem Units to fail, or that they were directly injured in some other way as a result of Rheem's alleged fraudulent conduct. *See, e.g., Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d

DCA 2011) ("FDUTPA requires proof of each individual plaintiff's actual . . . damage and defendant's causation of damage.").

At a bare minimum, in addition to pleading that the evaporator coils in their Rheem Units actually failed as a result of formicary corrosion, Plaintiffs must allege that they saw or heard a specific fraudulent statement made by Rheem, pursuant to which they acted to their detriment. *Montgomery*, 209 F.R.D. at 229; *see also Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1368 (S.D. Fla. 2007) (Cohn, J.) (dismissing FDUTPA claim because "Plaintiffs have made no allegations whatsoever regarding advertising they saw or relied upon."). Plaintiffs cannot rely on vague allegations that they were "exposed to" certain alleged omissions and misrepresentations and were somehow "deceived" to plead legal causation, particularly when they do not even allege that their evaporator coils failed due to the alleged defect they claim Rheem failed to disclose. *See* SAC ¶ 185.

These pleading deficiencies are particularly problematic here, where the SAC seemingly relies on (and incorporates) multiple exhibits that publicly discuss the possibility of formicary corrosion in HVAC evaporator coils, dating back years before the date on which the Plaintiffs purchased their Rheem Unit. SAC ¶¶ 5, 9-10, 117-21; SAC Exhs. 1-4; *see generally Brown v. Coward, et al.,* 69 So. 2d 174, 174-75 (Fla. 1953) (ruling that the plaintiff could not maintain an action for rescission based on lack of information when the information was available through "ordinary and acceptable means"); *Nelson v. Wiggs*, 699 So. 2d 258, 260 (Fla. 3d DCA 1997) (affirming a judgment denying a home buyer rescission of a purchase contract based on the concealment of seasonal flooding when the information regarding seasonal flooding was available in public records). Based on the foregoing, Plaintiffs have failed to sufficiently plead a cause of action for violation of FDUTPA, and Count IV should be dismissed. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

**2. Plaintiff Justice's FDUTPA claim is time-barred.**

Plaintiff Justice's FDUTPA claim is time-barred and must be dismissed, with prejudice. Order at 11-13; Fla. Stat. § 95.11(3)(f); *Matthews v. Am. Honda Motor Co.*, No. 12-60630-CIV, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012) (Williams, J.) ("Florida law suggests that Matthews sustained damage the moment that she purchased the vehicle with the alleged defect, even though the alleged defect did not manifest for several years."); *Marlborough Holdings*

*Grp., Ltd. v. Azimut-Benetti*, 505 F. App'x. 899, 906 (11th Cir. 2013) (noting that the delayed discovery doctrine does not apply to claims under FDUTPA because the action is founded on statutory liability where the statute explicitly states there is a four-year statute of limitations).[22]

### C. Plaintiffs Conceded That Their ADTPA, SCUTPA, and GFBPA Claims Fail as a Matter of Law and Should Be Dismissed

Plaintiffs previously conceded that their claims for violations of the ADTPA, SCUTPA, and GFBPA are fatally deficient and subject to dismissal. *See* Resp. in Opp'n to Mot. to Dismiss Am. Compl. [ECF No. 29] ("Resp.") at 16-17; *see also* Order at 13 ("Plaintiffs concede to the dismissal of their ADTPA, SCUTPA, and GFBPA counts. . . . Accordingly, the Court will dismiss Counts V, VII, and VIII."). The SAC contains no new allegations to cure the legal deficiencies of these claims, and, by Plaintiffs' own admission, Counts V, VI, and VII should be dismissed, with prejudice.

#### 1. Plaintiffs' ADTPA and GFBPA claims are time-barred.

Plaintiff Hatfield's ADTPA claim is time-barred because "[n]o action may be brought under this chapter more than one year after the person bringing the action discovers or reasonably should have discovered the act or practice that is subject to the action." Ala. Code. § 8-19-14. Here, Plaintiff Hatfield alleges that her Rheem Unit stopped cooling in July 2011, and that a "service technician from White's Refrigeration…found numerous problems, including a leaking coil." SAC ¶ 60. Accordingly, Hatfield was required to bring this ADTPA claim by July 2012.

Plaintiff Dotson's claim for violation of the GFBPA is also barred by the statute of limitations, because, under Georgia law, a GFBPA claim must be brought within two years "after the person bringing the action knew or should have known of the occurrence of the alleged violation." Ga. Code Ann. § 10-1-401. Dotson contends that "at some point in 2009," one of her Rheem Units stopped cooling and "its Rheem Coil was replaced in June 24, 2009." SAC ¶ 74. Based on these allegations, Dotson was required to bring this GFBPA claim by June 2011.

[22] Plaintiffs' new allegation that Rheem "contractually obligated itself to a warranted period of time greater than the statute of limitations" is inapposite because Plaintiff Justice's FDUTPA claims accrued at the time of his purchase, irrespective of what allegedly occurred during the warranty period. *See* Order at 11-13; *Matthews*, 2012 WL 2520675, at *4.

Because Plaintiffs Hatfield and Dotson did not bring their claims within the applicable statutes of limitations, and the SAC contains no new allegations to cure this deficiency, Counts V and VII should be dismissed, with prejudice. *See* Ala. Code. § 8-19-14; Ga. Code Ann. § 10-1-401.

**2. The ADTPA and GFBPA claims fail as a matter of law because Plaintiffs do not allege the required written notice.**

Counts V and VII of the SAC should also be dismissed because Plaintiffs fail to allege that they provided Rheem with written notice of their claims as required by Alabama and Georgia law. Ala. Code § 8-19-10; O.C.G.A. § 10-1-399; *Given v. Rent-A-Center, Inc.*, 720 F. Supp. 160, 162 (S.D. Ala. 1988) (dismissing ADTPA claim when "plaintiff failed to communicate to defendants a written demand for relief as is required by §8-19-10(e) of this act."); *Brown Realty Assocs., Inc. v. Thomas*, 389 S.E.2d 505, 510 (Ga. Ct. App. 1989); *see also* Resp. at 17; Order at 13.

**3. Plaintiffs Hatfield, Finn, and Dotson may not assert ADTPA, SCUTPA, or GFBPA claims in a representative capacity.**

Plaintiffs Hatfield, Finn, and Dotson may not assert Counts V, VI, and VII as representatives of a putative Class or Subclass because the ADTPA, SCUTPA, and GFBPA expressly prohibit class action relief. Ala. Code. § 8-19-10 (emphasis added); S.C. Code Ann. § 39-5-140(a); Ga. Code Ann. § 10-1-399 (emphasis added); *see also* Resp. at 17; Order at 13.

**4. Plaintiffs conceded that they failed to plead Counts V and VI with sufficient particularity.**

Plaintiffs' ADTPA and SCUTPA claims should also be dismissed because the SAC still fails to allege these claims with the requisite detail. *Cooper v. Bristole-Myers Squibb Co.*, No. 07-885, 2009 WL 5206130, at *7 (D.N.J. Dec. 30, 2009) (dismissing plaintiff's ADTPA claim under Rule 9(b) for failing "to identify any specific advertisements he viewed, how he was misled by these advertisements, how these advertisements affected [his purchase], and how these advertisements cause any of his injuries"); *Ethox Chemical, LLC v. Coca-Cola Co.*, No. 6:12-cv-01682-TMC, 2013 WL 41001, at *2-*3 (D.S.C. Jan. 3, 2013) (finding that SCUTPA claim could not be maintained absent specific allegations regarding unfair and deceptive acts that caused plaintiffs' injury). Indeed, the allegations purportedly supporting Plaintiffs' ADTPA and SCUTPA claims are still nothing more than legal buzzwords and general, conclusory statements

regarding Rheem's alleged conduct and corresponding state of mind. *See, e.g.,* SAC ¶ 191 ("acts and practices . . . constitute . . . false, misleading, and/or deceptive business practices in violation of the [ADTPA]."); SAC ¶ 200 ("acts and practices . . . constitute unfair, deceptive, and/or fraudulent business practices in violation of the [SCUTPA]."); *see also* Resp. at 17; Order at 13.

### D. Plaintiffs Fail to State a Claim for Unjust Enrichment in Count VIII

#### 1. Plaintiffs' unjust enrichment claim is based on the same conduct alleged in support of their breach of warranty and deceptive trade practice claims.

A claim for unjust enrichment must be dismissed if an express contract is alleged in the complaint. *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1326 (S.D. Fla. 2000) (Gold, J.); *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, Case No. 05-60860-CIV, 2007 WL 5960207, at *10 (S.D. Fla. May 15, 2007) (Dimitrouleas, J.); *David,* 629 F. Supp. 2d at 1324 (dismissing unjust enrichment claims when a plaintiff has an available contractual remedy by way of a breach of express warranty). Here, Plaintiffs acknowledge that the Warranty, which is attached to the SAC, applies to each of their allegedly defective Rheem Units. SAC ¶ 133; SAC Exhs. 5-7. For this reason alone, Count VIII should be dismissed. *See Webster*, 124 F. Supp. 2d at 1326; *Jeld-Wen*, 2007 WL 5960207, at *10; *David*, 629 F. Supp. 2d at 1324; *DeLoach v. Gen. Motors*, 369 S.E.2d 484, 486 (Ga. Ct. App. 1988); *see also* Exh. C at 14-15 (dismissing virtually identical unjust enrichment claim, with prejudice, because plaintiffs sought damages covered by a written warranty); Exh. D at 11 ("It is not whether Plaintiff is successful on a breach of contract claim that precludes her unjust enrichment claim, it is the undisputed existence of a contract.").

In addition to that, an unjust enrichment claim predicated on the same underlying allegations as a deceptive trade practices claim must be dismissed. *Jovine*, 795 F. Supp. 2d at 1342; *DeLoach*, 369 S.E.2d at 486. Here, Plaintiffs base their unjust enrichment claim on precisely the same insufficient, conclusory, and shot-gunned allegations as their breach of warranty and deceptive trade practice claims. In short, Count VIII should be dismissed because it is a factually duplicative, yet legally inconsistent cause of action in equity, premised on the same facts and circumstances as their breach of warranty and deceptive trade practices claims. *Twombly*, 550 U.S. at 555; *David* 629 F. Supp. 2d at 1324; *Jovine*, 795 F. Supp. 2d at 1342. *See*

*also* Exh. C at 14 (dismissing unjust enrichment claim, with prejudice, that was based on the same factual allegations as other asserted claims).[23]

**2. Plaintiffs have not, and cannot, allege a lack of adequate remedies at law.**

"It is well-settled that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists." *Am. Honda*, 390 F. Supp. 2d at 1178; *Prohias*, 490 F. Supp. 2d at 1236-37; *Webster*, 124 F. Supp. 2d at 1326-27. The preemption of an unjust enrichment claim is not dependent on the likelihood of success of available legal claims. Rather, the mere availability of these other claims renders an unjust enrichment claim unsustainable. *David*, 629 F. Supp. 2d at 1324 (dismissing unjust enrichment claim arising out of alleged breach of warranty "without determining whether Defendants have breached the express warranty").

Here, Plaintiffs do not allege in Count VIII (or anywhere else in the SAC) that no adequate legal remedy exists. Indeed, based on their allegations, Plaintiffs cannot make such an allegation because their claim for unjust enrichment is premised on the same exact conduct as their breach of warranty and deceptive trade practice claims. SAC ¶¶ 147-222. As a result, Plaintiffs' unjust enrichment claim must be dismissed. *See Prohias*, 490 F. Supp. 2d at 1236-37 (dismissing a claim for unjust enrichment where the plaintiffs had an adequate remedy at law); *Webster*, 124 F. Supp. 2d at 1326-27 (same); *Am. Honda*, 390 F. Supp. 2d at 1178 (same); *see also* Exh. C at 14-15.

---

[23] Moreover, courts in the Eleventh Circuit have rejected unjust enrichment claims predicated simply on an alleged wrong, such as the claim at bar, because a plaintiff may not rely on alleged wrongdoing to assert an unjust enrichment claim. "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003); *Prohias v. Phizer, Inc.*, 490 F. Supp. 2d 1228, 1237 (S.D. Fla. 2007) (Jordan, J.); *Union Pac. R.R. Co. v. Paragon Labs., Inc.*, Case No. 06-60873-CIV, 2006 WL 3709619, at *4 (S.D. Fla. Dec. 14, 2006) (Cohn, J.). Because Plaintiffs' unjust enrichment claim here is predicated solely on Rheem's alleged wrongdoing, it must be dismissed.

### E. Plaintiffs' Claim for Declaratory Judgment Fails as a Matter of Law

In Count IX, Plaintiffs seek a declaration that: "a) Rheem ACs containing copper Coils are defective because they are unreasonably susceptible to formicary corrosion; b) Certain provisions and limitations of Rheem's warranty are void as unconscionable and/or because they fail of their essential purpose; c) Rheem must notify AC owners of the defect; d) The durational limitations on the warranty are removed; e) Rheem will reassess all prior warranty claims and pay the full cost of repairs and damages; f) Rheem will replace, at its own cost, any Class Member's Rheem Coil with a non-copper coil; g) Rheem will pay the cost of inspection to determine whether any Class Member's Rheem Coils need replacement; and h) Any limitation of damages or disclaimer of warranty by Rheem with regard to Rheem Coils [is] void." SAC ¶ 228. As set forth below, Plaintiffs are not entitled to this laundry list of declarations because the relief they seek is indistinct from the relief sought in other counts of the SAC, and Plaintiffs do not currently face any threat of future injury.

To begin with, this Court "should not entertain an action for declaratory relief," where, as here, "the issues are properly raised in other counts of the pleadings and are already before the court." *Perret v. Wyndham Vacation Resorts, Inc.,* 889 F. Supp. 2d 1333, 1346. It is clear from Plaintiffs' allegations that the relief they seek in Count IX is indistinct from, and duplicative of, the relief sought in other counts of the SAC. The gravamen of each of Plaintiffs' claims is the same: (1) that the Rheem Units are defective; (2) that the Rheem Warranty's limitations are unconscionable and/or fail their essential purpose; and (3) that the damage limitations in the Rheem Warranty are void. Plaintiffs may not seek another bite at the apple by asserting a superfluous declaratory relief claim that seeks a duplicative remedy, and Count IX should be dismissed, with prejudice. *See* Exh. D at 12 (dismissing similar declaratory relief claim, with prejudice, because the declaration sought was "essentially the same as the relief sought in Plaintiff's other claims[.]").

Moreover, when seeking relief under the Federal Declaratory Judgment Act, a plaintiff "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp,*. 193 F.3d 1342, 1346 (11th Cir. 1999); *Interstate Fire & Casualty Co. v. Kluger, Peretz, Kaplan & Berlin, P.L.*, 855 F. Supp. 2d 1376, 1380 (S.D. Fla. 2012) (Martinez, J.). It is not enough for a plaintiff to allege that he has already suffered some injury, but rather, there must be a "substantial continuing controversy" between

the parties. *Malowney*, 193 F.3d at 1347. Therefore, a plaintiff "must assert a reasonable expectation that the injury . . . [he has] suffered will continue or will be repeated in the future." *Interstate Fire & Casualty*, 855 F. Supp. 2d at 1380 (emphasis added).

Here, Plaintiffs' SAC does not allege any reasonable expectation that Plaintiffs have suffered an injury that is continuing in nature or that will be repeated in the future. SAC ¶¶ 223-28 (seeking declarations regarding a present state or past conduct, as well as a reassessment of prior warranty claims). In fact, Plaintiffs do not allege what caused the problems they contend they experienced with their Rheem Units, and never allege that their Rheem Units' evaporator coils failed due to formicary corrosion. And, according to Plaintiffs' allegations, some of Plaintiffs' Rheem Units never experienced any failures and those that did were repaired. Furthermore, Plaintiffs allege that Rheem began using aluminum replacement coils, which, according to the SAC, are not susceptible to formicary corrosion, and which should, by Plaintiffs' own admission, abrogate any threat of future injury to Plaintiffs. SAC ¶¶ 11, 15, 126. Accordingly, there is no injury that is continuing in nature or that will be repeated in the future, and, for this reason, Plaintiffs' declaratory judgment claim must fail. *See Malowney*, 193 F.3d at 1346; *Interstate Fire & Casualty*, 855 F. Supp. 2d at 1380.

## IV. CONCLUSION

As demonstrated by the foregoing, despite being afforded three opportunities to plead a cause of action, Plaintiffs have not stated, and cannot state, an actionable claim against Rheem. Accordingly, Plaintiffs' Second Amended Complaint should be dismissed, with prejudice.

[THE REMAINDER OF THIS PAGE IS LEFT INTENTIONALLY BLANK]

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorneys for Defendant Rheem Manufacturing Company*
333 Avenue of the Americas, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

/s/ David A. Coulson
DAVID A. COULSON
Florida Bar No. 176222
coulsond@gtlaw.com
ADAM M. FOSLID
Florida Bar No. 682284
foslida@gtlaw.com
EVA M. SPAHN
Florida Bar No. 0092063
spahne@gtlaw.com
ROBERT S. GALBO
Florida Bar No. 106937
galbor@gtlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ David A. Coulson
DAVID A. COULSON

**SERVICE LIST**

| | |
|---|---|
| Theodore J. Leopold<br>tleopold@leopold-law.com<br>Leslie M. Kroeger<br>lkroeger@leopold-law.com<br>Leopold Law, P.A.<br>2925 PGA Boulevard, Suite 200<br>Palm Beach Gardens, FL 33410<br>Telephone: (561) 515-1400<br><br>*Counsel for Plaintiffs* | Jeffrey A. Leon<br>Jeff@Complexlitgroup.com<br>Jamie E. Weiss<br>Jamie@Complexlitgroup.com<br>Zachary Jacobs<br>Zachary@Complexlitgroup.com<br>Complex Litigation Group LLC<br>515 Central Ave, Suite 300<br>Highland Park, Illinois 60035<br>Telephone: (847) 433-4500<br><br>*Counsel for Plaintiffs* |
| Jonathan Shub<br>JShub@seegerweiss.com<br>Seeger Weiss LLP<br>1515 Market St., Suite 1380<br>Philadelphia, PA 19102<br>Telephone: (215) 564-2300<br><br>*Counsel for Plaintiffs* | Richard Burke<br>Rich@Complexlitgroup.com<br>Quantum Legal, LLC<br>1010 Market Street, Suite 1340<br>St. Louis, MO 63101<br><br>*Counsel for Plaintiffs* |
| Shane T. Rowley, Esq.<br>srowley@zlk.com<br>Levi & Korsinsky, LLP<br>30 Broad Street<br>24th Floor<br>New York, NY 10004<br>Telephone: (212) 363-7500<br><br>*Counsel for Plaintiff* | Andrew N. Friedman<br>afriedman@cohenmilstein.com<br>Douglas J. McNamara<br>dmcnamara@cohenmilstein.com<br>Cohen Milstein Sellers & Toll PLLC<br>1100 New York Avenue NW<br>Suite 500 West Tower<br>Washington, DC 20005-3934<br>Telephone: (202) 408-4600<br><br>*Counsel for Plaintiffs* |